# UNITED STATES *v.* MOTTAZ

No. 85–546.   Argued April 22, 1986—Decided June 11, 1986

BLACKMUN, J., delivered the opinion for a unanimous Court.

*Edwin S. Kneedler* argued the cause for the United States. With him on the briefs were *Solicitor General Fried, Assistant Attorney General Habicht, Deputy Solicitor General Wallace,* and *David C. Shilton.*

*Derck Amerman* argued the cause for respondent. With him on the brief was *Leonard A. Zolna, Jr.**

---

*\*John C. Christie, Jr., J. William Hayton, Stephen J. Landes,* and *Lucinda O. McConathy* filed a brief for The American Land Title Association as *amicus curiae* urging reversal.

JUSTICE BLACKMUN delivered the opinion of the Court.

The question presented by this case is whether respondent's suit against the United States is time barred. In 1954, the Government sold respondent's interests in three Indian allotments to the United States Forest Service for inclusion in the Chippewa National Forest in Minnesota. Respondent claims that the sale was void. We hold that respondent's suit is an action "to adjudicate a disputed title to real property in which the United States claims an interest," within the meaning of the Quiet Title Act of 1972, 28 U. S. C. § 2409a(a), and therefore is barred by that Act's 12-year period of limitations. See 28 U. S. C. § 2409a(f).

I

In 1905, pursuant to the General Allotment Act of 1887, 24 Stat. 388, as amended, 25 U. S. C. § 331 *et seq.* (1982 ed. and Supp. II), and the Nelson Act of 1889, 25 Stat. 642, three Chippewa Indian ancestors of respondent Florence Blacketter Mottaz each received an 80-acre allotment on the Leech Lake Reservation in Cass County, Minn.[1] Title to each of these allotments was held in trust by the United States. Respondent eventually inherited a one-fifth interest in one of the allotments and a one-thirtieth interest in each of the other two.

In the early 1950's, some holders of fractional interests in Leech Lake allotments petitioned the Department of the Interior to permit them to sell their lands.[2] On April 30, 1953,

Briefs of *amici curiae* urging affirmance were filed for the Navajo Tribe of Indians by *Paul E. Frye;* and for Katherine Nichols et al. by *Kim Jerome Gottschalk.*

[1] For a general discussion of the allotment program, see F. Cohen, Handbook of Federal Indian Law 612–632 (1982).

[2] By the Act of May 14, 1948, ch. 293, 62 Stat. 236, 25 U. S. C. § 483, the Secretary of the Interior "is authorized in his discretion, and upon application of the Indians owners . . . to remove restrictions against alienation, and to approve conveyances, with respect to lands or interests in lands held by individual Indians."

the Department's Office of Indian Affairs sent respondent two forms, captioned "Consent to Sale of Inherited Lands." App. 42, 43.[3] Accompanying the forms was a letter which read in part:

"As stated before, some of the owners have requested the sale of this land. Both land and timber, if any, have been appraised; and as soon as we get the consent to sell, an effort will be made to obtain a buyer by advertising for sale bids. This land will not be sold unless the high bid is equal to, or more than, the appraised value. If no reply is received from you within ten (10) days, it will be assumed that you have no objection to the sale." *Id.*, at 15.

The consent forms indicated that one of the allotments was appraised at $420.50 and the other at $605.75. Respondent neither replied to the letter nor returned the consent forms. In 1954, despite the lack of express consent from every person who held an interest in any of the three allotments, the Government sold them to the United States Forest Service.

Respondent visited the regional office of the Bureau of Indian Affairs in May 1967 and expressed an interest in selling her inherited Indian lands. Later that month, the realty officer sent her a letter informing her of her allotment interests. The letter did not mention the Leech Lake allotments. *Id.*, at 17. Respondent in 1981 again requested a list of her interests. In its reply, the Bureau set forth the allotments currently held in trust for her and, in addition, noted that she once had held interests in the Leech Lake allotments which had been sold by the Secretary as part of the so-called "Secretarial Transfer" program. *Id.*, at 44–45.[4]

---

[3] No contemporaneous document concerning the third allotment appears in the record.

[4] In the late 1970's, the Bureau sought to identify potential land claims that might be affected by the statute of limitations set forth in 28 U. S. C. § 2415 (1982 ed. and Supp. II), which pertains, among other things, to certain contract and tort actions brought by the United States on behalf of

## II

In 1981, respondent filed suit against the United States in the Federal District Court for the District of Minnesota. She claimed jurisdiction under 25 U. S. C. § 345, 28 U. S. C. §§ 1331, 1346, 1353, and 2415, and the Fifth Amendment. App. 7. She alleged that the sales of her three Leech Lake allotments "made without [her] consent or permission . . . were, therefore, illegal sales and transfers and are void." *Id.*, at 8. In addition, respondent raised four other claims regarding the sale: that the United States had breached its fiduciary duty in selling lands held in trust for her without first obtaining her consent; that the United States had acted negligently in selling her lands; that she had been deprived of property without due process; and that her property had been taken for public use without just compensation. *Id.*, at 10. Respondent also sought to represent both a nationwide and a Minnesota-based class of similarly situated Indian claimants. *Id.*, at 8–9.

Respondent originally sought either "[d]amages in a monetary sum equal to the current fair market value of each parcel illegally transferred" or "rescission of the illegal sale or transfer and the vesting of title of each individual parcel in the names of the appropriate descendants, heirs and assigns." *Id.*, at 10. After a preliminary hearing, she voluntarily dismissed, without prejudice, her claim requesting rescission. *Id.*, at 12.

The District Court ruled that respondent's claims were barred by 28 U. S. C. § 2401(a), the general statute of limitations governing actions against the United States. That sec-

Indians. (In 1982, § 2415 was amended to apply, as well, to contract and tort claims brought by individual Indians and tribes.) The Bureau identified as "Secretarial transfers" those sales made without the consent of all the heirs. See H. R. Rep. No. 97–954, p. 7 (1982); see generally *County of Oneida* v. *Oneida Indian Nation*, 470 U. S. 226, 242–243 (1985) (discussing § 2415 claims).

tion provides, in pertinent part, that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The court held that respondent's cause of action first accrued when she learned of the sale of the lands. Since respondent's deposition "clearly reveal[ed] that she had knowledge of the sale in 1954," App. to Pet. for Cert. 10a, her suit, filed 27 years after the sale, was barred.[5]

The Court of Appeals reversed and remanded. 753 F. 2d 71 (CA8 1985). While it recognized that respondent's complaint was somewhat opaque, it rejected the Government's claim that respondent was seeking, not simply to establish title to the allotments, but also to obtain damages for alleged negligence and breach of fiduciary duty: the complaint "must be read as raising the one essential claim that her land was sold without her consent, that she did not receive payment for her land, and that accordingly the sale was void and she retains title to the land." *Id.*, at 75. The claim for damages equal to the current fair market value of the land "must be construed as equivalent to a claim for return of the land itself." *Ibid.*

The Court of Appeals ruled that such a claim could not be time barred. This Court in *Ewert* v. *Bluejacket*, 259 U. S. 129 (1922), had held that the sale of an allotment to a Government agent in violation of federal law is "'void and confers no

---

[5] The District Court also rejected respondent's arguments that § 2401(a) does not apply to suits by Indians for breach of fiduciary duties, and that § 2415's special provisions dealing with Indian land claims override the general statute of limitations established by § 2401(a). With respect to the former claim, the court stated: "By its very terms 28 U. S. C. § 2401(a) applies to *'every civil action commenced against the United States. . . . '*" App. to Pet. for Cert. 10a (emphasis in District Court opinion). With respect to the latter claim, the court held that § 2415 "applies to actions brought *on behalf of* a recognized tribe or individual Indian" by the United States (emphasis in original). App. to Pet. for Cert. 10a. It does not, however, "permit claims *against* the United States." *Id.*, at 10a–11a (emphasis in original).

right upon the wrongdoer,'" *id.*, at 138, quoting *Waskey* v. *Hammer*, 223 U. S. 85, 94 (1912), and had refused to apply principles of laches to bar the Indians' claim against Ewert. Although *Ewert* v. *Bluejacket* did not consider whether federal statutes of limitations apply to land claims brought by Indian allottees, the Court of Appeals found that § 2401(a) "does not bar claims of title to allotments because *Ewert* is based on the principle that, if the underlying sale of land is void, the concept that a cause of action 'accrues' at some point is inapplicable because the allottee simply retains title all along." 753 F. 2d, at 74.

Thus, the Court of Appeals concluded that the statute of limitations question depended on the resolution of several preliminary issues. It therefore remanded the case to the District Court to determine whether the Secretary lacked the authority in 1954 to sell respondent's lands without her consent, and, if such a sale would have been unauthorized, whether respondent either had consented or had actually received payment following the sale, in which case her consent could be inferred. If respondent proved on remand that the sale was illegal, then, "[i]n light of the land's inclusion within the Chippewa National Forest and the thirty years which have passed since the sale, . . . she may force the government to pay her the fair market value of the land rather than to simply return the land itself." *Id.*, at 75.

The Government petitioned for rehearing and rehearing en banc. In its petition, the Government claimed, apparently for the first time, that respondent's suit to recover land currently held by the United States was barred, not by the general 6-year statute of limitations in § 2401(a), but rather by the 12-year limitations period established by the Quiet Title Act. 2 Record 16. In addition, the Government argued that the Court of Appeals' holding that respondent could compel the United States to pay her the fair market value of her property involved relief "of the type typically provided by the Tucker Act," *ibid.*, but a Tucker Act claim would

clearly be barred by the 6-year statute of limitations. The Court of Appeals denied the Government's petition. App. to Pet. for Cert. 13a. Because of the importance of the issue, we granted certiorari to consider whether respondent's claim was barred under either § 2401(a) or § 2409a(f), the limitations provision governing Quiet Title Act claims. 474 U. S. 994 (1985).

### III

When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction. *United States* v. *Sherwood*, 312 U. S. 584, 586 (1941). In particular, "[w]hen waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." *Block* v. *North Dakota*, 461 U. S. 273, 287 (1983). Neither the District Court nor the Court of Appeals discussed the precise source of its jurisdiction, and the parties at various times before this Court have identified the jurisdictional basis of respondent's suit as the Quiet Title Act, 28 U. S. C. §§ 1346(f) and 2409a; the Allotment Acts, 25 U. S. C. § 345 and 28 U. S. C. § 1353; and the Tucker Act, 28 U. S. C. § 1346(a)(2). Thus, we must decide which, if any, of these statutes conferred jurisdiction on the District Court and the Court of Appeals, and then determine whether respondent's suit was brought within the relevant limitations period.

### A

In *Block* v. *North Dakota*, 461 U. S., at 286, this Court held that "Congress intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." Here, respondent contests the United States' claim that it acquired title to the allotments in 1954. We think that respondent's suit falls within the scope of the Quiet Title Act, 28 U. S. C. § 2409a(a), which governs "civil action[s] . . . to adjudicate a disputed title to real property in which the United States

claims an interest." Respondent's description of her claim clearly brings it within the Act's scope:

"At no time in this proceeding did respondent drop her claim for title. To the contrary, the claim for title is the essence and bottom line of respondent's case. Her position is simply that the land remains in the name of Mottaz and the other heirs of the property despite what some pieces of paper executed by petitioner without her consent and without a court hearing purport to do." Brief for Respondent 3.

See also 753 F. 2d, at 74, 75. The relief respondent seeks confirms this characterization of her suit. Respondent does not seek recovery of her share of the proceeds realized by the United States from the 1954 sale but allegedly never distributed. A claim for monetary damages in that amount would involve a concession that title had passed to the United States Forest Service in 1954 and that the sole issue was whether respondent was fairly compensated for the taking of her interests in the allotments. Rather, respondent demands damages in the amount of the *current* fair market value of her interests. What respondent seeks is a declaration that she alone possesses valid title to her interests in the allotments and that the title asserted by the United States is defective, and an order requiring the United States to pay her the value of her interest today in order properly to transfer title.

Nonetheless, respondent claims that her suit is not governed by the Quiet Title Act because, by its own terms, that Act "does not apply to trust or restricted Indian lands," § 2409a(a), such as the lands in which she asserts an interest. Respondent misconstrues this exclusion, which operates solely to retain the United States' immunity from suit by third parties challenging the United States' title to land held in trust for Indians. See, *e. g.*, S. Rep. No. 92–575, p. 6 (1971); H. R. Rep. No. 92–1559, p. 13 (1972); Dispute of Titles on Public Lands, Hearing on S. 216, S. 579, and S. 721

before the Subcommittee on Public Lands of the Senate Committee on Interior and Insular Affairs, 92d Cong., 1st Sess., 19 (1971). Thus, when the United States claims an interest in real property based on that property's status as trust or restricted Indian lands, the Quiet Title Act does not waive the Government's immunity.[6] Here, however, the United States claims an interest in the Leech Lake lands, not on behalf of Indian beneficiaries of a trust, but rather on behalf of the United States Forest Service and the Chippewa National Forest. Thus, the Act provides the United States' consent to suit concerning its claim to these lands, provided, of course, that the plaintiff challenging the Government's title meets the conditions attached to the United States' waiver of immunity.

The limitations period is a central condition of the consent given by the Act. See, *e. g.*, *Block*, 461 U. S., at 283–285; H. R. Rep. No. 92–1559, *supra*, at 5, 7–8. The Act provides:

> "Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it is accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U. S. C. § 2409a(f).

The District Court expressly found that respondent knew of the sale in 1954. Moreover, the list of interests provided to respondent by the Bureau of Indian Affairs in 1967 did not include any of the three Leech Lake allotments. Thus, by

---

[6] In urging that such an exemption be included in the Quiet Title Act, the Solicitor for the Department of the Interior noted that excluding suits against the United States seeking title to lands held by the United States in trust for Indians was necessary to prevent abridgment of "solemn obligations" and "specific commitments" that the Federal Government had made to the Indians regarding Indian lands. A unilateral waiver of the Federal Government's immunity would subject those lands to suit without the Indians' consent. See H. R. Rep. No. 92–1559, p. 13 (1972).

1967, at the very latest, respondent was on notice that the Government did not recognize her title to the allotments. Whether respondent actually knew that the allotments had been included within the Chippewa National Forest and thus were claimed by the United States, her undisputed knowledge that the Government no longer recognized *her* as having a valid claim to the allotments satisfies the "should have known" prong of § 2409a(f)'s accrual test.[7] Her claim is therefore barred.

B

Respondent, however, seeks to avoid the carefully crafted limitations of the Quiet Title Act by characterizing her suit as a claim for an allotment under the General Allotment Act of 1887, 24 Stat. 388, as amended, 25 U. S. C. § 331 *et seq.* (1982 ed. and Supp. II). That Act grants jurisdiction to the district courts over suits "involving the right . . . to any allotment." 25 U. S. C. § 345.[8] Respondent claims that the

---

[7] Our finding that respondent's cause of action accrued more than 12 years prior to her filing suit does *not* rest on the fact that the letter sent by the Government in 1953 informed respondent that the failure to reply within 10 days would be deemed a consent to the sale. That letter expressly noted that the land would be sold only if a bid of at least its appraised value were received. App. 15. It therefore was entirely possible that no sale would occur even if respondent expressly had consented to the sale. Respondent's cause of action accrued only because she in fact knew that a sale had been completed and knew, or should have known, that the Government was the purchaser.

[8] Title 25 U. S. C. § 345 reads in full:

"All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment

general 6-year statute of limitations governing all civil actions against the Government, 28 U. S. C. § 2401(a), does not apply to cases brought under the General Allotment Act, and that her claim therefore cannot be time barred. We need not reach the question whether § 2401(a) applies to claims brought under § 345 of the General Allotment Act, and, if it does, when a cause of action begins to run, since we conclude that respondent cannot use § 345 for a quiet title action against the Government.

Section 345 grants federal district courts jurisdiction over two types of cases: (i) proceedings "involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty," and (ii) proceedings "in relation to" the claimed right of a person of Indian descent to land that was once allotted. Section 345 thus contemplates two types of suits involving allotments: suits seeking the issuance of an allotment, see, *e. g.*, *Arenas* v. *United States*, 322 U. S. 419 (1944), and suits involving "'the interests and rights of the Indian in his allotment or patent after he has acquired it,'" *Scholder* v. *United States*, 428 F. 2d 1123, 1129 (CA9), cert. denied, 400 U. S. 942 (1970), quoting *United States* v. *Pierce*, 235 F. 2d 885, 889 (CA9 1956).

The structure of § 345 strongly suggests, however, that § 345 itself waives the Government's immunity only with respect to the former class of cases: those seeking an original

---

of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant); and the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him, but this provision shall not apply to any lands now held by either of the Five Civilized Tribes, nor to any of the lands within the Quapaw Indian Agency: *Provided,* That the right of appeal shall be allowed to either party as in other cases."

A corresponding provision governing district court jurisdiction appears in 28 U. S. C. § 1353. Respondent invoked jurisdiction under both § 345 and § 1353 in her complaint. App. 7.

allotment. In those suits, § 345 provides that "the parties thereto *shall be* the claimant as plaintiff and the United States as party defendant" (emphasis added), while, as to the latter class of cases, no mention of the United States' participation is made.[9] Accordingly, in *Affiliated Ute Citizens* v. *United States*, 406 U. S. 128 (1972), this Court held that, to the extent that § 345 involves a waiver of federal immunity, as opposed to a grant of subject-matter jurisdiction to the district courts, that section "authorizes, and provides governmental consent for, only actions *for* allotments." 406 U. S., at 142 (emphasis added). See also *Naganab* v. *Hitchcock*, 202 U. S. 473 (1906) (sovereign immunity precludes suit against United States regarding disposition of Indian lands).

That federal courts may have general subject-matter jurisdiction over claims to quiet title to allotments brought by Indians, see n. 9, *supra*, does not therefore mean that the United States has waived its immunity in cases where an Indian challenges the United States' claim of title in its own right. As the Court already has noted, Congress intended the Quiet Title Act "to provide the exclusive means by which adverse claimants [can] challenge the United States' title to real property." *Block*, 461 U. S., at 286. In *Block*, the State of North Dakota sued the federal officers responsible for supervising a riverbed within the State which both the State and the Federal Government claimed to own and

---

[9] In fact, § 345 has been used by Indians to sue parties other than the United States to quiet title to land originally given under various allotment schemes. See, *e. g.*, *Begay* v. *Albers*, 721 F. 2d 1274 (CA10 1983); *Vicenti* v. *United States*, 470 F. 2d 845 (CA10 1972), cert. dism'd, 414 U. S. 1057 (1973) (plaintiffs sought recovery of title from private parties; suit against the United States for damages held barred by sovereign immunity). To hold that in *all* cases brought under § 345 the United States must be named as a party defendant would restrict the access to federal courts afforded Indians raising claims or defenses involving their land entitlements because the United States would obviously not be a proper party in many private disputes that relate to land claims originally granted by various Allotment Acts.

sought an injunction barring them from exercising privileges of ownership over the bed. The Court held that such an "officer's suit" was precluded since it would circumvent the "carefully crafted provisions of the QTA deemed necessary for the protection of the national public interest." *Id.*, at 284–285. To permit challenges to the Government's claim of title to be brought under other jurisdictional provisions might mean that "the QTA's 12-year statute of limitations, the one point on which the Executive Branch was most insistent, could be avoided, and, contrary to the wish of Congress, an unlimited number of suits involving stale claims might be instituted." *Id.*, at 285. Moreover, to permit officer's suits might thwart Congress' determination that the Government be given the option of paying just compensation and thereby keeping land even after an adverse judgment, see § 2409a(b), in order to avoid disruption of ongoing federal activities involving the disputed property. 461 U. S., at 285.

To permit suits against the United States under the General Allotment Act poses similar dangers. Not only could it permit plaintiffs to avoid the Quiet Title Act's 12-year statute of limitations, but it could also seriously disrupt ongoing federal programs. The remedial clause of the General Allotment Act provides that a judgment in favor of an Indian claimant "shall have the same effect . . . as if such allotment had been allowed and approved by [the Secretary of the Interior]." 25 U. S. C. § 345. Thus, if plaintiffs were permitted to sue under the General Allotment Act, they would be entitled to actual possession of the challenged property. This would pose precisely the threat to ongoing federal activities on the property that the Quiet Title Act was intended to avoid. That the plaintiff in this case claims the right to elect a remedy that would not require the Government to relinquish its possession of the disputed lands is irrelevant: the Quiet Title Act expressly gives that choice to the Government, not the claimant. 28 U. S. C. § 2409a(b). In light of Congress' purposes in enacting the Quiet Title Act, we can-

not conclude that Congress intended to permit persons in respondent's position to avoid that Act's strictures.[10]

## C

At oral argument, respondent claimed that her case is based solely on the General Allotment Act. See Tr. of Oral Arg. 23, 26. Nevertheless, at various times during this litigation, both parties have identified the Tucker Act as providing a source of federal jurisdiction over respondent's claims. Although respondent and the Government apparently agree that a suit based on the Tucker Act would be barred by the general 6-year statute of limitations, 28 U. S. C. § 2401(a), we must address the possibility that the District Court's jurisdiction rested on the Tucker Act because, if it did, the Court of Appeals for the Eighth Circuit may have lacked jurisdiction over respondent's appeal.[11]

---

[10] The Indian Claims Limitation Act of 1982, 96 Stat. 1976, which amended 28 U. S. C. § 2415(a), essentially tolls—for a time—the general 6-year statute of limitations for many damages actions that may be brought *by* the Federal Government on behalf of Indians. Respondent claims that § 2415 also shows that Congress did not intend the general 6-year statute of limitations for damages actions brought *against* the Federal Government, 28 U. S. C. § 2401, to apply to her claim. But § 2415 is expressly inapplicable to actions "to establish the title to, or right of possession of, real or personal property." 28 U. S. C. § 2415(c). In *County of Oneida* v. *Oneida Indian Nation*, 470 U. S., at 240–241, the Court concluded that Indian land claims not subject to any federal limitations period were presumptively exempt from state statutes of limitations as well. Respondent's claim, however, is based on a particular federal statute—the Quiet Title Act—that contains its own limitations period.

[11] Under 28 U. S. C. § 1295(a)(2), the Court of Appeals for the Federal Circuit possesses exclusive jurisdiction over an appeal from a district court's decision

"if the jurisdiction of that court was based, in whole or in part, on section 1346 of this title, except that jurisdiction of an appeal in a case brought in a district court under section 1346(a)(1), 1346(b), 1346(e), or 1346(f) of this title or under section 1346(a)(2) when the claim is founded upon an Act of Congress or a regulation of an executive department providing for internal

Prior to the passage of the Quiet Title Act, adverse claimants had resorted to the Tucker Act to circumvent the Government's immunity from quiet title suits. Rather than seeking a declaration that they owned the property at issue, such claimants would concede that the Government possessed title and then would seek compensation for the Government's having taken the property from them. See *Block*, 461 U. S., at 280–281; H. R. Rep. No. 92–1559, at 9, 12. In

revenue shall be governed by sections 1291, 1292, and 1294 of this title [the provisions granting jurisdiction to the regional courts of appeals]."

Thus, if the District Court's jurisdiction here depended on the Tucker Act, § 1346(a)(2), then the Eighth Circuit lacked jurisdiction over respondent's appeal, and we would have to vacate its judgment and remand the case with directions to transfer the appeal pursuant to 28 U. S. C. § 1631 to the Federal Circuit. See, *e. g., Ballam* v. *United States*, 474 U. S. 898 (1986); *Pacyna* v. *Marsh*, 474 U. S. 1078 (1986).

In light of our conclusion that the District Court's jurisdiction was not based on the Tucker Act, but instead rested on § 1346(f) (Quiet Title Act claims), we need not reach the difficult and unsettled question of how an appeal raising both issues committed to the Federal Circuit's jurisdiction and issues outside its jurisdiction is to be treated. See, *e. g.*, S. Rep. No. 97–275, pp. 19–20 (1981); H. R. Rep. No. 97–312, p. 41 (1981); Court of Appeals for the Federal Circuit—1981, Hearings on H. R. 2405 before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Committee on the Judiciary, 97th Cong., 1st Sess., 90 (1981) (testimony of James W. Geriak); Cihlar & Goldstein, A Dialogue About the Potential Issues in the Patent Jurisdiction of the Court of Appeals for the Federal Circuit, 10 APLA Q. J. 284 (1982); Drabiak, Jurisdiction of the New Court of Appeals for the Federal Circuit, 73 Ill. B. J. 218 (1984); Newman, Tails and Dogs: Patent and Antitrust Appeals in the Court of Appeals for the Federal Circuit, 10 APLA Q. J. 237 (1982) (all discussing the issue in the context of patent appeals that also raise antitrust claims).

In particular, we express no opinion on the question whether, since § 1295(a)(2) explicitly disclaims Federal Circuit jurisdiction over claims based on § 1346(f), and the Federal Circuit is a court of limited jurisdiction, see H. R. Rep. No. 97–312, *supra*, at 39, an appeal in a case raising both Tucker Act and Quiet Title Act claims would have to be bifurcated and sent in part to the regional circuit and in part to the Federal Circuit. Cf. S. Rep. No. 97–275, *supra*, at 20.

light of the Quiet Title Act's explicit statement that § 2409a(a) does not "apply to or affect actions which may be or could have been brought under sections 1346 . . . [or] 1491 . . . of this title," [12] we cannot conclude that Tucker Act-based suits, like the officer's suit at issue in *Block*, are clearly precluded by the passage of the Quiet Title Act.

But regardless of whether other claimants may invoke the district courts' Tucker Act jurisdiction to hear their claims, it is clear that respondent has not brought a case falling within the scope of the Tucker Act.   In *Healy* v. *Sea Gull Specialty Co.*, 237 U. S. 479, 480 (1915), Justice Holmes, writing for a unanimous Court, stated that "the plaintiff is absolute master of what jurisdiction he will appeal to," and noted that "[j]urisdiction generally depends upon the case made and relief demanded by the plaintiff."   Thus, since the "essential features," *id.*, at 481, of Healy's case involved allegations of patent infringement and a request for the relief characteristically provided by patent law, Healy could invoke federal patent law jurisdiction despite the fact that the measure of damages was fixed by contract.

Respondent now invokes federal jurisdiction only under the General Allocation Act and its jurisdictional counterpart. Moreover, the case she has made, and the relief she seeks, do not fit within the scope of the Tucker Act.   A Tucker Act-based lands suit would seek damages equal to just compensation for an already completed taking of the claimant's land.   See, *e. g.*, *Block*, 461 U. S., at 280–281; H. R. Rep. No. 92–1559, at 7, 9, 12–13.   As we have noted, however, respondent is not seeking whatever compensation she allegedly

[12] The broad reference to "sectio[n] 1346" is somewhat opaque.   Section 1346(f), in fact, grants the district courts "exclusive original jurisdiction of civil actions under section 2409a."   The exclusion in § 2409a therefore cannot be read to include all suits that can be brought under § 1346.   We think, however, that the exclusion of suits brought under § 1491—the Tucker Act provision granting the Claims Court jurisdiction—supports finding a similar exclusion of suits brought under § 1346(a)(2)—the analogous district court provision.

was denied in 1954. Rather, she claims she still owns her interests in the allotments, and she seeks to force the Government to buy those interests. She claims, in essence, that no legally cognizable taking has yet occurred. See Brief for Respondent 3–4. Respondent and the Court of Appeals view payment rather than return of the land as an appropriate remedy because respondent's allotments now lie within the Chippewa National Forest. But neither views this payment as representing damages for the Government's past acts, the essence of a Tucker Act claim for monetary relief. See, *e. g.*, *United States* v. *Mitchell,* 463 U. S. 206 (1983). Since this Indian respondent's claim was not based on the Tucker Act, her appeal to the Court of Appeals for the Eighth Circuit was proper.

## IV

Federal law rightly provides Indians with a range of special protections. But even for Indian plaintiffs, "[a] waiver of sovereign immunity 'cannot be lightly implied but must be unequivocally expressed.'" *United States* v. *Mitchell,* 445 U. S. 535, 538 (1980), quoting *United States* v. *King,* 395 U. S. 1, 4 (1969). Congress has consented to a suit challenging the Federal Government's title to real property only if the action is brought within the 12-year period set by the Quiet Title Act. The limitations provision of the Quiet Title Act reflects a clear congressional judgment that the national public interest requires barring stale challenges to the United States' claim to real property, whatever the merits of those challenges. Accordingly, the judgment of the Court of Appeals is reversed.

*It is so ordered.*