33 F.3d 59
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
KOOTZNOOWOO, INCORPORATED, Plaintiff-Appellant,
v.
Edward F. SPANG, Director of the Bureau of Land Management
in the State of Alaska; Bruce Babbitt, Secretary of the
United States Department of the Interior; United States
Department of the Interior, Bureau of Land Management,
Defendants-Appellees.
 No. 93-35195.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 9, 1994.
Decided Aug. 10, 1994.
 
 1
 Before: WIGGINS and THOMPSON, Circuit Judges, EZRA,** District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Kootznoowoo, Incorporated ("Kootznoowoo") appeals the district court's order dismissing its complaint for lack of subject matter jurisdiction. Because the Quiet Title Act, 28 U.S.C. Sec. 2409a, provides the exclusive means for challenging the United States' title to real property, and because this Act specifically excludes actions against the United States involving trust or restricted Indian lands, we affirm the district court's order.
 
 Factual and Procedural Background
 
 4
 This case involves a land ownership dispute based upon conveyances made (1) by the Department of Interior, Bureau of Land Management ("BLM") to an individual Native Alaskan pursuant to the Alaska Native Allotment Act, and (2) by the United States Congress to an Alaska Native Village Corporation pursuant to Section 506 of the Alaska National Interest Land Conservation Act.
 
 
 5
 In 1906 Congress passed the Alaska Native Allotment Act ("1906 Allotment Act")[1], which authorized the Secretary of the Interior to allot up to 160 acres of land to any Alaska Native as a homestead. The 1906 Allotment Act was repealed by Section 18(a) of the Alaska Native Claims Settlement Act ("ANCSA"), 43 U.S.C. Sec. 1617(a), which included a savings provision for allotment applications pending on December 18, 1971. Pursuant to ANCSA, Native Village Corporations were created and given rights to select federal public lands near their home villages. See 43 U.S.C. Secs. 1613 and 1615(a)-(b). However, all conveyances made pursuant to ANCSA were made "subject to valid existing rights." 43 U.S.C. Sec. 1613(g). The Department of the Interior has interpreted this phrase to preclude conveyance of public land subject to entries "maintained in compliance with [ ] laws leading to the acquisition of title." 43 C.F.R. 2650.3-1(a).
 
 
 6
 In November of 1971, Jimmie Johnson, a Tlingit Indian, submitted a timely application for a Native allotment under the 1906 Allotment Act. In 1974, Kootznoowoo, Incorporated ("Kootznoowoo"), a corporation formed by the Native people of the village of Angoon, filed selection applications for various tracts of land on Admiralty Island pursuant to Section 16 of ANCSA, 43 U.S.C. Sec. 1615. Kootznoowoo's applications included lands in Jimmie Johnson's allotment claim.
 
 
 7
 In 1980, Congress passed the Alaska National Interest Lands Conservation Act ("ANILCA")[2], which amended portions of ANCSA. Section 506 of ANILCA, entitled "Admiralty Island Land Exchanges," offered to convey certain lands to Kootznoowoo, including, within the outside boundaries of the land grant, property contained in Jimmie Johnson's allotment application. In exchange, Kootznoowoo would give up selected lands on Admiralty Island to be managed by the Forest Reserve as a National Monument. Under Section 506(a)(8)(B) of ANILCA, the land rights Kootznoowoo received under ANILCA would be deemed a full satisfaction of its land entitlement rights, as Kootznoowoo's selection applications became void on June 1, 1981. 94 Stat. 2409. In addition, Kootznoowoo's rights to this land, like its former rights to lands selected under ANCSA, were explicitly made "subject to valid existing rights." ANILCA Sec. 503(a)(3), 94 Stat. 2407.
 
 
 8
 Section 905 of ANILCA provides for the automatic approval of certain Native Allotment Applications that were not protested by a Native Corporation by June 1, 1981. See ANILCA Sec. 905(a)(5), 94 Stat. 2435. On June 1, 1981, Kootznoowoo filed a protest with the BLM against Jimmie Johnson's allotment claim, and for that reason, Johnson's claim was not approved but was held open for adjudication. On June 1, 1984, the BLM issued a decision approving the Johnson application and rejecting Kootznoowoo's village selection application insofar as it conflicted with Johnson's claim. Kootznoowoo subsequently initiated a private contest proceeding under 43 C.F.R. Sec. 4.450 to challenge the BLM's decision. On April 17, 1984, Administrative Law Judge Harvey C. Sweitzer dismissed Kootznoowoo's contest and confirmed the BLM's decision to issue a certificate of allotment to Johnson. Kootznoowoo appealed, and on June 8, 1989, the Interior Board of Land Appeals ("IBLA") affirmed the ALJ's conclusion that Johnson's application was valid.
 
 
 9
 On June 7, 1991, Kootznoowoo filed its complaint in the United States District Court for the District of Alaska, claiming that the IBLA had erred in upholding the BLM's authority to rule on Jimmie Johnson's allotment application, and in concluding that Johnson's application established a "valid existing right" to the disputed land. Kootznoowoo sought declaratory relief to establish that the disputed land had been automatically conveyed to it under Section 506 of ANILCA, and an injunction to prevent the BLM from issuing a certificate of allotment to Jimmie Johnson's heirs.
 
 
 10
 On January 4, 1993, the district court entered judgment for the government and dismissed the action on jurisdictional grounds. The court found that Kootznoowoo's claim represented a challenge to an interest claimed by the United States in real property and thus fell within the scope of the Quiet Title Act, 28 U.S.C. Sec. 2409a (the "QTA"). The district court found that, because the QTA precludes suits against the United States concerning title to "trust or restricted Indian lands," Kootznoowoo's action was barred by the absence of an effective waiver of sovereign immunity.
 
 
 11
 On February 26, 1993, Kootznoowoo filed a timely appeal to this court.
 
 Standard of Review
 
 12
 Subject matter jurisdiction determinations are subject to de novo review. North Star Alaska v. United States, 9 F.3d 1430, 1432 (9th Cir.1993) (en banc). The district court's factual findings on jurisdictional issues must be accepted unless clearly erroneous. Elias v. Connett, 908 F.2d 521, 523 (9th Cir.1990).
 
 Discussion
 
 13
 Federal sovereign immunity insulates the United States from suit "in the absence of an express waiver of this immunity from Congress." Block v. North Dakota, 461 U.S. 273, 280 (1983). Such waivers, to be effective, must be "unequivocally expressed," and the government's consent to be sued must be construed "strictly in favor of the sovereign." United States v. Nordic Village, Inc., 112 S.Ct. 1011, 1014-15 (1992) (citations omitted). In this case, Kootznoowoo seeks review of the IBLA's June 8, 1989 ruling by invoking the congressional waiver of sovereign immunity contained in the Administrative Procedures Act, 5 U.S.C. Sec. 702 (the "APA"). The APA provides for judicial review of agency decisions as follows:
 
 
 14
 A person suffering legal wrong because of agency action ... is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency ... acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.... Nothing herein ... confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.
 
 
 15
 5 U.S.C. Sec. 702 (1977) (emphasis added). Thus, under the APA, the United States waives its sovereign immunity when a person has suffered some legal wrong as a result of an agency decision, except where some other statute controls. In this case, the district court found that the QTA was such an "other statute," and that judicial review under the APA was precluded under the QTA's express terms.
 
 
 16
 By enacting the QTA, Congress waived, with certain important exceptions, the government's sovereign immunity when the government is a party to a dispute over title to a parcel of land. The QTA provides as follows:
 
 
 17
 The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section does not apply to trust or restricted Indian lands....
 
 
 18
 28 U.S.C. Sec. 2409a(a) (1978) (emphasis added). Thus, the QTA waives sovereign immunity where the United States has an interest in the disputed property, unless the property is "trust or restricted Indian land."[3] The United States Supreme Court has held that "[o]nly upon passage of the QTA did the United States waive its immunity with respect to suits involving title to land." Block, 461 U.S. at 280. Thus the QTA is the "exclusive means by which adverse claimants [can] challenge the United States' title to real property." Id. at 286. The Court in Block explicitly rejected the theory that one could avoid the limitations of the QTA by bringing an action under the APA. Id. at 286 n. 22. Consequently, when the United States has an interest in the disputed property, the waiver of sovereign immunity must be found, if at all, within the QTA.
 
 
 19
 The Supreme Court has noted that "when the United States claims an interest in real property based on that property's status as trust or restricted Indian lands, the Quiet Title Act does not waive the government's immunity." United States v. Mottaz, 476 U.S. 834, 843 (1986).[4] Further, this court has previously held that "[n]othing in the [QTA] or its history suggests that the United States was to be put to the burden of establishing its title when it has a colorable claim and has chosen to assert its immunity on behalf of land of which the government declares that it is the trustee for Indians." Wildman v. United States, 827 F.2d 1306, 1309 (9th Cir.1987). In this case, it is clear that the United States has claimed an interest in the disputed property based on its status as trust or restricted Indian land; the government has not asserted title to the land in its own behalf.
 
 
 20
 A Native occupant's filing of a timely application under the 1906 Allotment Act vests his or her preference rights to the land. Alaska v. 13.90 Acres of Land, 625 F.Supp. 1315, 1319 (D.Alaska 1985), aff'd sub nom., Etalook v. Exxon Pipeline Co., 831 F.2d 1440 (9th Cir.1987). Once such an allotment is vested and the occupant gains equitable title to it, the United States' legal title is held in trust for the occupant. Id. at 1320. In this case, Jimmie Johnson filed a valid allotment application in November of 1971. Thus, as of November 1971, the United States has held this property in trust pending completion of the allotment process. The government's interest in the lands described in Johnson's allotment application is, therefore, of the type contemplated by the "trust or restricted Indian lands" limitation of the QTA.[5] Accordingly, the government has not waived sovereign immunity as to the disputes concerning this land, and this court has no jurisdiction over this lawsuit.
 
 
 21
 In its briefs, Kootznoowoo launches three main arguments to support its position that the district court's dismissal of its complaint was improper. First, Kootznoowoo asserts that Jimmie Johnson failed to meet the requirements for an allotment under the 1906 Allotment Act because his use and occupancy of the lands was not substantially continuous, was not potentially exclusive of others, and was merely a "communal" use similar to that of other Native residents. Second, Kootznoowoo argues that sovereign immunity cannot be invoked in this case because the Secretary of the Interior and other federal agency officials exceeded their authority by approving Jimmie Johnson's allotment claim. Third, Kootznoowoo argues that the purposes of the QTA and ANILCA would best be served if the Indian lands exception of the QTA were held inapplicable where, as in this case, a Native Village Corporation challenges the United States' interest as trustee.
 
 
 22
 Kootznoowoo's first argument is without merit. Kootznoowoo merely renews its contentions that the BLM misapplied relevant statutory and regulatory standards when it approved Jimmie Johnson's allotment application. The question of whether or not Johnson's use of the disputed land entitled him to an allotment involves the precise issues that would need to be decided if Kootznoowoo's claim were to proceed to a resolution on the merits. In its current posture, however, this case presents only the threshold issue of whether the district court had subject matter jurisdiction over Kootznoowoo's claim. The QTA's limitations on actions challenging the United States' assertions of title apply without regard to the ultimate validity of those assertions. As this court has previously stated, "[t]he immunity of the government applies whether the government is right or wrong." Wildman, 827 F.2d at 1309. Indeed, "[t]he very purpose of the doctrine is to prevent a judicial examination of the merits of the government's position." Id. To the extent that the QTA allows any inquiry on the merits, that inquiry can extend no further than a determination that the government had some rationale for its claim. As noted above, the Wildman court held that "[n]othing in the [QTA] or its history suggests that the United States was to be put to the burden of establishing its title when it has a colorable claim and has chosen to assert its immunity on behalf of land of which the government declares that it is the trustee for Indians." Id. (emphasis added).
 
 
 23
 In this case, the United States has, at the very least, a "colorable claim" regarding the property in dispute. None of the arguments advanced by Kootznoowoo suggest that the United States' characterization of the disputed property as "restricted Indian land" within the meaning of the QTA is frivolous. Moreover, as noted above, the government's obligations regarding land designated in an allotment application under the 1906 Allotment Act originate before the application is adjudicated. See Alaska v. 13,90 Acres, 625 F.Supp. at 1319-20 (holding that the government keeps legal title in trust for allotment applicants upon their filing timely applications); see also Pence v. Kleppe, 529 F.2d 135, 140, 140-42 (9th Cir.1976) (holding that Alaskan Natives acquire enforceable property interests upon satisfaction of the requirements for filing valid allotment applications). Thus Kootznoowoo's criticisms of the substance of the BLM's decision simply do not support an attack on the sufficiency of the United States' characterization of the property as "restricted Indian land."
 
 
 24
 The ALJ who rejected Kootznoowoo's first administrative appeal provided a lengthy analysis of the evidence concerning Jimmie Johnson's use and occupancy of the disputed land. The IBLA, in turn, affirmed the ALJ's conclusions concerning the Johnson application. Kootznoowoo now points to evidence that, in its view, would support a contrary conclusion as to Johnson's rights under tribal law and custom. Kootznoowoo fails to show, however, that the IBLA's conclusion was unsupported by substantial evidence. Thus, there is nothing in the record before this court to indicate that the United States, as Johnson's trustee, did not have a "colorable claim" to the disputed land.
 
 
 25
 Kootznoowoo's second argument is also unpersuasive. Kootznoowoo urges this court to find that sovereign immunity does not apply because the Secretary of the Interior exceeded his authority in exercising jurisdiction over this case.[6] Kootznoowoo maintains that the IBLA exceeded its authority by approving for conveyance a piece of land that the agency no longer had authority to convey. Kootznoowoo asserts that the disputed property was congressionally conveyed to it pursuant to Section 506 of ANILCA, and that the BLM now lacks jurisdiction to determine the title to these lands. Kootznoowoo points to other administrative decisions in which the IBLA held that it did not have the authority to adjudicate title to land determined by the BLM to be a valid allotment following a prior conveyance of the same land. See State of Alaska v. Thorson, 83 IBLA 237 (1984); Bay View, Inc., 126 IBLA 281 (1993).[7]
 
 
 26
 Kootznoowoo contends that the IBLA should have applied the same reasoning it used in Thorson and Bay View to refuse to exercise jurisdiction over the land dispute in this case. According to Kootznoowoo, the government's interest as holder in trust of the disputed property was extinguished by ANILCA's legislative grant of legal title to the Native Corporation. Kootznoowoo argues that the IBLA erred in construing the "subject to valid existing rights" language of ANILCA to exclude the disputed lands from Kootznoowoo's grant, thereby allowing the United States to retain its interest as trustee and to invoke the "Indian lands" limitation of the QTA. In so arguing, Kootznoowoo effectively seeks a reconsideration of the IBLA's decision regarding its jurisdiction over the instant property dispute.
 
 
 27
 Kootznoowoo's statement that the IBLA "exceeded its authority" is misguided: there is no evidence before this court to support the contention that the IBLA acted unconstitutionally or somehow surpassed its statutory authority by choosing not to apply its earlier holding in Thorson to the instant case. Indeed, in considering Jimmie Johnson's allotment claim, the ALJ fully considered the jurisdictional questions raised by Thorson and its progeny and found those cases to be "distinguishable from the instant case not only on their facts, but also on their reasoning and on the law applied." On appeal, the IBLA affirmed the ALJ's finding that the Department of the Interior retained jurisdiction to determine the validity of Johnson's Native allotment application.[8]
 
 
 28
 The fact that Kootznoowoo disagrees with the IBLA's findings as to this issue does not indicate that the agency "exceeded its authority." The IBLA's decision to exercise jurisdiction was based on its conclusion that, in light of the specific facts of this case and the particular statutes involved, the "subject to valid existing rights" language of ANILCA permitted the United States to retain a trust interest in the disputed land. Even if the IBLA was incorrect in this determination, it clearly did not exceed its authority in reaching such a result, and thereby adjudicating the parties' dispute pursuant to 43 C.F.R. Sec. 4.450. Furthermore, there is every indication that the IBLA's assertion of authority to adjudicate Jimmie Johnson's application rested on a reasoned interpretation of the scope of ANILCA's legislative conveyance to Kootznoowoo. This court has previously held that the Secretary of the Interior's construction of the phrase "valid existing rights" under ANCSA is entitled to "great weight" upon judicial review. Seldovia Native Ass'n, Inc. v. Lujan, 904 F.2d 1335, 1342 (9th Cir.1990). This court need not conclude that the IBLA's construction of "valid existing rights" was the only one it permissibly could have adopted, or the one which the court would have adopted had the question initially arisen in a judicial proceeding. It is only necessary that the agency's interpretation is reasonable and is not contrary to congressional intent. Id. In this case, we grant the IBLA the same deference with regard to its construction of "valid existing rights" in the context of ANILCA as we have regarding the same phrase under ANCSA. In light of the IBLA's thorough analysis of ANILCA's effect upon the Department of the Interior's jurisdiction over the present land dispute, it is clear that the United States has retained, at the very least, a "colorable claim" regarding its title, as trustee, to the disputed property. See Wildman, 827 at 1309. Although Kootznoowoo may not agree with the IBLA's interpretation of the term "subject to valid existing rights," the QTA operates to bar further review by this court.
 
 
 29
 Finally, Kootznoowoo argues that the purposes of the QTA and ANILCA would best be served if the Indian lands exception of the QTA were held inapplicable where, as in this case, a Native Village Corporation challenges the United States' interest as trustee. Kootznoowoo contests the district court's determination that the Indian land exception to the QTA "applies with the same force [against Kootznoowoo] as against any other party foreign to the trustee-trustor relationship." Kootznoowoo argues that "it was never the intent of Congress to preclude judicial review of an agency decision in the situation where, as here, [ ] the plaintiff is an Indian entity created by Congress with the purpose to hold and manage title to aboriginal lands." Kootznoowoo argues that Wildman, along with all the other cases dismissed for lack of jurisdiction under the Indian lands exception to the QTA, "did not deal with a situation where both entities claiming title to the same piece of land were Indians." Kootznoowoo urges this court not to fall under the "misconception that an Indian entity created by Congress should be treated as a non-Indian entity, completely ignoring the purposes of [ANCSA]."
 
 
 30
 Kootznoowoo's arguments as to this issue are puzzling. First, it is unclear how granting the government sovereign immunity under the QTA in this case would "directly conflict" with the intent of Congress, or with the Supreme Court's interpretation of laws benefitting Native Americans. Nothing in the text or legislative history of the QTA suggests any intention by Congress to give Native Village Corporations, or any other class of Natives or Native-owned entities, privileged status as quiet-title plaintiffs. This court has previously held that Native Americans, just like other litigants seeking relief from the United States, must identify a clear waiver of sovereign immunity to avoid dismissal. See Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d 588, 592 (9th Cir.), cert. denied, 498 U.S. 824 (1990). In Mottaz, the Supreme Court held that the QTA's statute of limitations applies to Native Americans as well as to other litigants. See 476 U.S. at 841. Kootznoowoo offers no argument as to why Native Village Corporations should receive more favorable treatment than tribes. Furthermore, when Congress has intended to provide a waiver of sovereign immunity for suits brought by Native American claimants, it has done so explicitly. See Section 345 of the General Allotment Act of 1887, 25 U.S.C. Sec. 345 (waiving the government's immunity in cases seeking an original allotment). Thus, this court should not read a waiver of sovereign immunity into the QTA when Congress itself has declined to do so.
 
 Conclusion
 
 31
 For the foregoing reasons, we AFFIRM the district court's dismissal of the complaint for lack of subject matter jurisdiction.
 
 
 
 *
 The Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Act of May 17, 1906, 34 Stat. 197, as amended Aug. 2, 1956, 70 Stat. 954, 43 U.S.C. Secs. 270-1 through 270-3 (1970)
 
 
 [2]
 Pub.L. No. 96-487, 94 Stat. 2435
 
 
 [3]
 The Indian land exception to the QTA was added by Congress for the following purpose:
 The federal government's trust responsibility for Indian lands is the result of solemn obligations entered into by the United States government. The federal government has over the years made specific commitments to the Indian people through written treaties and through informal and formal agreements. The Indians, for their part, have often surrendered claims to vast tracts of land. President Nixon has pledged his administration against abridging the historic relationship between the federal government and the Indians without the consent of the Indians.
 H.R.Rep. No. 1559, 92nd Cong., 2d Sess., reprinted in 1972 U.S.S.C.A.N. 4556-57.
 
 
 [4]
 In Mottaz the Native American plaintiff challenged the government's sale of her interest in three Indian allotments. The plaintiff sought to avoid the limitations of the QTA by characterizing her suit as a claim for an allotment under the General Allotment Act of 1887, 25 U.S.C. Sec. 331 et seq. That Act grants jurisdiction to the district courts over suits "involving the right ... to any allotment." 25 U.S.C. Sec. 345. The Court, in interpreting Section 345, found that the statute contemplated two types of suits involving allotments: those seeking the issuance of an allotment, and those involving "the interests and rights of the Indian in his allotment or patent after he has acquired it." Mottaz, 476 U.S. at 845. The Court, in rejecting plaintiff's claims, found that Section 345 waived sovereign immunity only with respect to the former class of cases: those seeking an original allotment. Id. at 845-46
 
 
 [5]
 If the United States claimed a property interest, not on behalf of the Native beneficiary of a trust, but in its own behalf, the QTA's waiver of sovereign immunity would apply. Mottaz, 476 U.S. at 843
 
 
 [6]
 Kootznoowoo relies on the Eleventh Circuit's statement that "when government officials exceed their authority their actions are not authorized by the sovereign" and sovereign immunity does not apply. See Florida v. United States Dept. of Interior, 768 F.2d 1248, 1251 (11th Cir.1985), cert. denied, 475 U.S. 1011 (1986). However, this exception from immunity applies "only where the action is challenged as not one of the sovereign because it is alleged to be either unconstitutional or beyond the government agency's statutory authority." Id. at 1252 (citing Dugan v. Rank, 372 U.S. 609 (1963)). Further, "[o]nly where the official's conduct cannot be attributed to the sovereign because the official had no power to do the alleged acts can it properly be said that the action is not one against the United States as sovereign." Id
 
 
 [7]
 Both Thorson and Bay View involved a dispute between a Native allotment applicant and another grantee of federal lands regarding title to the property described in the allotment application. Like Kootznoowoo, the land grantees in both Thorson and Bay View were conveyed lands subject to "valid existing rights"; in both cases, the grantees, like Kootznoowoo, lodged timely protests to the Native allotments pursuant to ANILCA. In Thorson, the IBLA dismissed the contest, holding that Section 906(c)(1) of ANILCA, which confirmed all tentative approvals of the grantee's land selections subject to valid existing rights, effectively conveyed the disputed lands out of federal ownership so as to remove the contest from the Department of the Interior's jurisdiction. See Thorson, 83 IBLA at 253. The IBLA's decision rested on its interpretation of the phrase "subject to valid existing rights": it held that this term was one of "qualification" which did not diminish the quantum of the land grant, but instead merely subjected it to the potentially superior claim of the Native allottee. Id. at 242. The IBLA thus rejected the allottee's argument that "subject to valid existing rights" were words of "exception" which removed the disputed property from the land grant. Id. The IBLA went on to note that, despite the Department of the Interior's loss of jurisdiction over the property dispute, the Department nevertheless had a duty under the 1906 Allotment Act to pursue "recovery" of the contested land on behalf of the Native allottee by either negotiating with the grantee or filing suit on the allottee's behalf. See id. at 254 (citing Aguilar v. United States, 474 F.Supp. 840 (D.Alaska 1979))
 In Bay View, the IBLA similarly held that the land grant at issue conveyed legal title, thus removing the property dispute from the Department of the Interior's jurisdiction. See Bay View, 126 IBLA at 286.
 
 
 [8]
 Further, in Bay View, the allotment applicant cited to the IBLA's June 8, 1989 decision in the Kootznoowoo's present suit in support of its contention that the BLM did not lack jurisdiction to adjudicate his Native allotment application. The IBLA rejected the applicant's argument, finding that the jurisdictional issues in that case were distinguishable from those involved in Jimmie Johnson's allotment claim. See Bay View, 126 IBLA at 288 n. 12. Kootznoowoo describes this holding in Bay View as "wrong." See Kootznoowoo's Supplemental Reply Brief, at 2