75 F.3d 449
 96 Cal. Daily Op. Serv. 274, 96 Daily Journal
D.A.R. 3190,
96 Daily Journal D.A.R. 419
STATE of Alaska, Plaintiff-Appellant,
v.
Bruce BABBITT, Secretary of the Interior; United States of
America; Evelyn Foster, Defendants-Appellees.
 No. 94-35677.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 11, 1995.
Decided Oct. 5, 1995.
Amended Opinion Filed Jan. 11, 1996.
Further Amended on Denial of Rehearing and Suggestion for
Rehearing En Banc March 19, 1996.
 
 E. John Athens, Jr., Assistant Attorney General and Paul R. Lyle, Assistant Attorney General, Fairbanks, Alaska, for appellant.
 Jeffrey P. Kehne, U.S. Department of Justice, Washington, DC, and Marilyn J. Twitchell, Alaska Legal Services Corporation, Anchorage, Alaska, for appellees.
 Appeal from the United States District Court for the District of Alaska.
 Before: HALL, WIGGINS and KLEINFELD, Circuit Judges.
 
 ORDER
 
 1
 The panel as constituted in the above case has voted to deny appellant's petition for rehearing and to reject the suggestion for a rehearing en banc filed on November 17, 1995.
 
 
 2
 The full court has been advised of the suggestion for en banc rehearing and no judge of the court has requested a vote on the suggestion for rehearing en banc. Fed.R.App.P. 35.
 
 
 3
 The petition for rehearing is denied and the suggestion for a rehearing en banc is rejected.
 
 
 4
 The parties are allowed to file a petition for rehearing addressing the modified section III of the amended opinion filed January 11, 1996.
 
 OPINION
 WIGGINS, Circuit Judge:
 BACKGROUND
 
 5
 In 1962, the Bureau of Land Management ("BLM") granted the State of Alaska ("Alaska") a right-of-way, pursuant to 23 U.S.C. § 317, for the construction of the George Parks Highway. The right-of-way grant was amended in 1969 to include a slightly different section of land.
 
 
 6
 In June 1971, Evelyn Foster applied for a Native allotment of land pursuant to the Allotment Act, 43 U.S.C. §§ 270-1 to 270-3 (1970) (repealed 1971).[1] The Allotment Act allowed Alaska natives to apply for land that they had used for certain specified purposes for at least five years. 43 U.S.C. §§ 270-1, 270-3 (1970). A section of Alaska's 1969 amended right-of-way grant runs through the parcel of land for which Foster applied. Foster's application was granted by the BLM in 1979, based on the finding that she had used the designated parcel for statutorily specified purposes since 1964.
 
 
 7
 The BLM issued another opinion in 1989 confirming its prior approval of Foster's allotment, but expressly subjecting the allotment to Alaska's original 1962 right-of-way for the George Parks Highway. The BLM reasoned that Foster's preference right to the land, which vested when she filed a valid allotment application, "related back" to 1964, the date on which she began to use and occupy the land. Thus, because Alaska had received its original right-of-way grant before Foster had begun her use of the land in 1964, Alaska's right-of-way took precedence over Foster's claim to the land under the Allotment Act. By the same reasoning, the BLM determined that Foster's preference right to the land took precedence over Alaska's other claims to the land that arose after 1964, including Alaska's 1969 amended right-of-way.
 
 
 8
 Alaska appealed the BLM's decision regarding the amended right-of-way to the Interior Board of Land Appeals ("IBLA"), which affirmed the BLM. The IBLA decision in effect voided Alaska's 1969 amended right-of-way. Alaska then filed a complaint in federal district court, seeking judicial review of the IBLA's decision. The district court dismissed the complaint, concluding that it lacked subject-matter jurisdiction over the action due to the United States' immunity from suit under the Quiet Title Act, 28 U.S.C. § 2409a ("QTA").
 
 
 9
 Alaska appeals the district court's dismissal. We have jurisdiction under 28 U.S.C. § 1291. As explained below, and primarily on the authority of Alaska v. Babbitt (Albert Allotment), 38 F.3d 1068, 1072 (9th Cir.1994) ("Albert "), we affirm the district court's dismissal for lack of subject-matter jurisdiction.
 
 DISCUSSION
 I. STANDARD OF REVIEW
 
 10
 The district court's determination regarding subject-matter jurisdiction is reviewed de novo, but the court's underlying factual findings "must be accepted unless clearly erroneous." Albert, 38 F.3d at 1072.
 
 
 11
 II. SOVEREIGN IMMUNITY UNDER THE QUIET TITLE ACT
 
 
 12
 Alaska asserts that the United States is not immune from its suit because the United States has waived its sovereign immunity under 5 U.S.C. § 702 (Administrative Procedure Act ("APA")); 28 U.S.C. § 2409a (QTA); and 43 U.S.C. § 1632(a) (Alaska National Interest Lands Conservation Act ("ANILCA")). In this type of case, however, "the waiver of sovereign immunity must be found, if at all, within the QTA." Albert, 38 F.3d at 1073.[2]
 
 
 13
 Albert further compels our conclusion that the QTA's waiver of sovereign immunity does not permit Alaska's suit. The QTA's waiver expressly does not apply to "trust or restricted Indian lands." 28 U.S.C. § 2409a(a). As long as the United States has a "colorable claim" to a property interest based on that property's status as trust or restricted Indian lands, the QTA renders the government immune from suit. Albert, 38 F.3d at 1076. Alaska asserted for the first time at oral argument that the United States does not have a "colorable claim" on behalf of Foster in the land over which the 1969 amended right-of-way runs because Alaska had been issued a material site grant that included that land in 1961. Despite the apparent existence of this material site grant prior to Foster's use of the land, Alaska never raised this ground for invalidating Foster's allotment, either when it was first informed of the allotment in 1979, or during the later BLM and IBLA proceedings.
 
 
 14
 "The QTA's limitations on actions challenging the United States' assertions of title apply without regard to the ultimate validity of those assertions. As this court has previously stated, '[t]he immunity of the government applies whether the government is right or wrong.' " Id. (quoting Wildman v. United States, 827 F.2d 1306, 1309 (9th Cir.1987)). Here, as in Albert, because the allotment remains unpatented, the government has a trust interest in the disputed property; "the scope of this trust status is the same, whether or not the State controls rights-of-way over the lands." Id. Furthermore, having notified Alaska in 1979 about Foster's allotment and having proceeded through the administrative process without Alaska's challenging the allotment because of the 1961 material site grant, the United States' claim that it held the land in trust for Foster is not arbitrary or frivolous. See id. Accordingly, the Quiet Title Act does not waive the government's immunity. United States v. Mottaz, 476 U.S. 834, 843, 106 S.Ct. 2224, 2230, 90 L.Ed.2d 841 (1986); Albert, 38 F.3d at 1073.
 
 
 15
 III. ULTRA VIRES EXCEPTION TO SOVEREIGN IMMUNITY
 
 
 16
 Even though the QTA does not waive the government's sovereign immunity in this case, Alaska also argues that if the BLM acted ultra vires in approving Foster's allotment (which resulted in cancellation of Alaska's right-of-way), then sovereign immunity will not bar Alaska's action for judicial review of the agency's decision. According to Alaska, it may properly bring suit under the Administrative Procedure Act (APA), 5 U.S.C. § 702, which provides a general waiver of sovereign immunity for suits against federal officers in which the plaintiff seeks relief other than money damages.
 
 
 17
 However, the Supreme Court has expressly held that "Congress intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." Block v. North Dakota, 461 U.S. 273, 286, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983) (rejecting a suit by North Dakota against several federal officials alleging that they unlawfully asserted jurisdiction over a riverbed that belonged to the state). The Court noted that if plaintiffs are allowed to avoid the provisions of the QTA by instituting an officer's suit, then
 
 
 18
 all of the carefully crafted provisions of the QTA deemed necessary for the protection of the national public interest could be averted.... If we were to allow claimants to try the Federal Government's title to land under an officer's-suit theory, the Indian lands exception to the QTA would be rendered nugatory.
 
 
 19
 Id. at 284-85, 103 S.Ct. at 1818-19.
 
 
 20
 Alaska attempts to distinguish its case by claiming that it is not bringing what the Supreme Court calls an "officer's suit," but instead is bringing an "ultra vires" action. This distinction is without merit. The Supreme Court has made it clear that suits alleging "ultra vires" acts, actions that are outside the scope of a government officer's authority or are unconstitutional, are a subgroup of officer's suits as a whole. See Block, 461 U.S. at 281-82, 103 S.Ct. at 1816-17; Larson v. Domestic & Foreign Corp., 337 U.S. 682, 687-90, 69 S.Ct. 1457, 1460-1461, 93 L.Ed. 1628 (1949). Though such "ultra vires" suits regarding federal claims to land may have been permissible prior to the QTA under Larson and Malone v. Bowdoin, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962), the Block court "applied the rule that a precisely drawn, detailed statute pre-empts more general remedies," Block, 461 U.S. at 285, 103 S.Ct. at 1818, in finding that the QTA dictated the exclusive means by which a challenge to the United State's title to land could be brought. Thus, the Court has specifically proscribed officer's suits, including "ultra vires" suits, as a means of divesting the government's sovereign immunity in quiet title actions relating to trust or restricted Indian land.
 
 
 21
 Furthermore, the Court expressly rejected the claim that Section 702 of the APA authorizes such suits against federal officers:
 
 
 22
 [Section 702] waived federal sovereign immunity for suits against federal officers in which the plaintiff seeks relief other than money damages, but it specifically confers no "authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." The QTA is such an "other statute"....
 
 
 23
 Block, 461 U.S. at 286 n. 22, 103 S.Ct. at 1819 n. 22 (quoting 5 U.S.C. § 702). In Block, the QTA precluded the suit because it was time barred by the QTA's twelve-year statute of limitations. See also McIntyre v. United States, 789 F.2d 1408, 1410-11 (9th Cir.1986) (holding that Block precluded a homesteader's APA § 702 quiet title claim and challenge to the Bureau of Land Management's trespass action against him), rev'd on other grounds, Fadem v. United States, 52 F.3d 202 (9th Cir.1995). In subsequent cases, courts have construed this language to mean that the APA does not waive immunity as to any claims that are otherwise precluded by the QTA--for instance, claims precluded by the Indian lands exception. See Metropolitan Water Dist. of So. Cal. v. United States, 830 F.2d 139, 143-44 (9th Cir.1987) (rejecting a suit challenging the Secretary of the Interior's authority to resurvey the boundary of an Indian Reservation), aff'd sub nom California v. United States, 490 U.S. 920, 109 S.Ct. 2273, 104 L.Ed.2d 981 (1988) (per curiam); Spaeth v. Secretary of Interior, 757 F.2d 937, 942-43 (8th Cir.1985) (holding that the QTA, not APA § 702, governs plaintiff's action, and remanding to determine whether the government can prove a substantial possibility that the lands in question are Indian lands); Florida v. United States Dept. of the Interior, 768 F.2d 1248, 1253-55 (11th Cir.1985) (holding that APA's waiver of sovereign immunity was inapplicable to action challenging Department of Interior acquisition of land to construct museum to display artifacts and inter remains uncovered from Indian burial site). Thus, officer's suits brought under the APA have also failed to surmount the government's claim of sovereign immunity under the Indian lands exception.
 
 
 24
 In Albert, we noted that the State, in a similar challenge, had not presented sufficient evidence to support its claim that the Secretary or the agency acted either ultra vires or unconstitutionally. Albert, 38 F.3d at 1076. It is true, in general, that such evidence is necessary before this Court may divest a federal officer of sovereign immunity, and the Court correctly noted that the State had not made a sufficient showing. This court did not, however, address the issue of whether an officer's suit supported by sufficient evidence would be permissible if the suit were otherwise barred by the QTA's Indian lands exception. Because the Supreme Court in Block clearly indicated that plaintiffs may not employ officer's suits to circumvent the QTA's Indian lands exception, we must adhere to this precedent and hold that Alaska's officer's suit is precluded by the United States' sovereign immunity.
 
 
 25
 Thus, in light of Block 's holding that the QTA is the exclusive means to challenge the United States' title to real property, we must reject Alaska's suit against the BLM and its officers. We therefore hold that Alaska may not use the ultra vires exception to sovereign immunity to divest the United States of immunity in this case.
 
 IV. INITIATION OF ADMINISTRATIVE PROCEEDINGS
 
 26
 On the basis of Albert, we reject Alaska's argument that the United States waived its immunity from suit by initiating an administrative action against the State. See 38 F.3d at 1074-75.
 
 CONCLUSION
 
 27
 Although Alaska urges us to distinguish Albert, we cannot find a legally sound basis for doing so. Unless and until an en banc panel of the Ninth Circuit revisits Albert, we are bound to follow it. That means that we must hold in this case that Alaska's suit is precluded by the United States' sovereign immunity. We accordingly affirm the district court's dismissal of the case for lack of subject-matter jurisdiction.
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 The Allotment Act was repealed by the Alaska Native Claims Settlement Act, Pub.L. No. 92-203, 85 Stat. 688 (1971) (codified at 43 U.S.C. §§ 1601-1624) ("ANCSA"). ANCSA contained a savings clause for allotment applications filed pursuant to the Allotment Act that were "pending before the Department of Interior on December 18, 1971." 43 U.S.C. § 1617(a)
 
 
 [2]
 This court did not consider in Albert whether the United States had waived its immunity in 43 U.S.C. § 1632(a) (ANILCA § 902). We now hold that section 1632(a) is a statute of limitations provision, rather than an " 'unequivocally expressed' " waiver of immunity. See, Albert, 38 F.3d at 1072 (quoting United States v. Nordic Village, 503 U.S. 30, 33-34, 112 S.Ct. 1011, 1013-1014, 117 L.Ed.2d 181 (1992)); cf. 16 U.S.C. § 3117(a) (ANILCA § 807) (certain persons aggrieved by the federal government's failure to comply with certain sections of the Act "may ... file a civil action in the United States District Court for the District of Alaska")