**WASTE MANAGEMENT OF OHIO, INC., Plaintiff–Appellant,**

**v.**

**CITY OF DAYTON, Defendant–Appellee.**

No. 96–3977.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 9, 1997.

Decided Dec. 23, 1997.

Gail C. Ford (briefed), Vorys, Sater, Seymour & Pease, Columbus, OH, John Winship Read (argued and briefed), Vorys, Sater,

Seymour & Pease, Cleveland, OH, for Plaintiff–Appellant.

J. Anthony Sawyer, Office of the City Attorney, Neil F. Freund (briefed), Shawn M. Blatt (argued), Freund, Freeze & Arnold, Dayton, OH, for Defendant–Appellee.

Before: JONES, SUHRHEINRICH, and MOORE, Circuit Judges.

MOORE, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. JONES, J. (pp. 1146–47), delivered a separate opinion concurring in the result.

MOORE, Circuit Judge.

Plaintiff–Appellant Waste Management of Ohio, Inc. ("WMO") appeals the district court's order that found a lack of jurisdiction to address its dispute with Defendant–Appellee City of Dayton (the "City"). The underlying dispute concerns whether the City, by virtue of its post-settlement actions, is estopped from refusing to approve WMO's construction of buildings on the south side of a landfill property, instead of the west side as originally designated in a consent decree between the parties. For the following reasons, we conclude that the district court does have subject matter jurisdiction over this dispute and, therefore, reverse.

## I. BACKGROUND

In February 1991 federal litigation ensued between WMO and the City regarding the latter's denial of WMO's request to rezone a large tract of land on the west side of Dayton (from single-family residential to industrial) in order for a sanitary landfill (the "Stony Hollow Landfill") to be operated thereon. Joint Appendix (J.A.) at 18 (Compl., filed Feb. 22, 1991). WMO and the City entered into a settlement agreement on April 15, 1992 (the "Settlement Agreement"), which resolved the lawsuit, provided for construction of the Stony Hollow Landfill, and incorporated the Planned Development for Stony Hollow ("revised PD–69" or "PD–69"). J.A. at 88, 105 (Def.'s Ex. B with Attach. A). This Settlement Agreement was, in turn, incorporated into a consent decree entered and approved by the district judge on April 16, 1992 (the "Consent Decree"). J.A. at 84 (Agreed Consent Decree and Order, filed Apr. 16, 1992).

Two years after the judicial entry of the Consent Decree and the City's subsequent approval of the rezoning, as part of the process of obtaining final permits required for the construction of the Stony Hollow Landfill, WMO submitted an Overall Site Plan containing specific design and construction requirements to the Ohio EPA with a copy to the City. In a letter dated March 15, 1994 from Paul Woodie, Director of Planning for the City, to WMO, the City pointed to four areas [1] in which there existed a discrepancy between the Overall Site Plan and PD–69, the fourth being the relocation of buildings and support facilities from the west side to the south side. J.A. at 359–60 (Pl.'s Ex. 7 at 1–2). The letter further stated, however, with respect to the fourth item only, "it appears that the new arrangement does meet the intent and provisions of PD–69" and that "[t]he change in access drives, building locations and support facilities as shown ... is in substantial compliance with PD–69." J.A. at 360 (Pl.'s Ex. 7 at 2). WMO and the City differ as to the meaning and legal significance of this statement as it relates to the relocation issue. This difference in perception became apparent when WMO sought permission to fill a ravine in order to bring the southern area up to grade in preparation for the building construction and to alter slightly the buildings' location on the south

1. When WMO and the City could not reach an agreement as to Items 1–3 (setback, height, slope), WMO filed a Motion for Clarification of the Consent Decree and for Supplemental Relief Pursuant to the Settlement Agreement. J.A. at 115 (Motion for Clarification, filed May 31, 1994). The district court sustained WMO's motion as to Item 1 but overruled its motion as to Items 2 and 3. J.A. at 179 (Decision and Entry, filed Mar. 30, 1995). These conclusions were based on the district court's interpretation of what revised PD–69 had specifically designated for each of these design requirements since it was the court's belief that under "the Settlement Agreement ... WM[O is required to] construct the landfill in accordance with revised PD–69." J.A. at 195 (Decision and Entry, filed Mar. 30, 1995, at 17). This decision and order was not appealed by WMO and is not a subject of this appeal.

side, and the City responded that it had never approved the relocation in the first place. J.A. at 364 (Pl.'s Ex. 8 at 2). WMO then proceeded under the Dayton Zoning Code § 150.289 to seek approval for the relocation. J.A. at 215 (Def.'s Ex. B). Woodie and Michael Cromartie, the Superintendent of Building Inspection for Dayton, were proposing to approve the change, unless a majority of the City Commission were to direct them to do otherwise. J.A. at 365 (Def.'s Ex. D). Yet, on April 27, 1995 WMO's Division President, Robert Downing, Jr., was notified that Woodie and Cromartie had decided to reject the requested relocation. J.A. at 211 (Downing Aff. at 3 with Ex. E).

When the City filed a motion for an order releasing certain funds that had been placed in escrow pending resolution of other disputes [2] between WMO and the City, WMO objected, claiming that the City had breached the Settlement Agreement and Consent Decree by changing its position regarding the location of the Stony Hollow Landfill buildings when it was estopped from doing so. J.A. at 203 (Pl.'s Mem. in Opp'n to Mot. to Release Escrowed Funds, filed May 2, 1995). On July 26, 1996 the district court ordered the release of the escrowed funds upon deciding that it only had subject matter jurisdiction to determine "whether [the] Settlement Agreement and the Consent Decree permit WM[O] to locate the buildings on the south side" and could not address the impact of any state law claims in answering this question. J.A. at 41 (District Ct. Op. at 10). The scope of the district court's subject matter jurisdiction over this dispute is the narrow issue now on appeal before this court.

The district court had jurisdiction over the action that ended with entry of the Consent Decree pursuant to 28 U.S.C. § 1331 (federal question). This court has appellate jurisdiction, pursuant to 28 U.S.C. § 1292(a)(1), over the district court's July 26, 1996 interlocutory order refusing to modify a consent decree which is injunctive in nature. See Carson v. American Brands, Inc., 450 U.S. 79, 86–87, 101 S.Ct. 993, 997–98, 67 L.Ed.2d 59 (1981); Lorain NAACP v. Lorain Bd. of Educ., 979 F.2d 1141, 1147 (6th Cir.1992), cert. denied,

509 U.S. 905, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993).

## II. ANALYSIS

■ This court should review de novo the district court's jurisdictional ruling. See In re Dow Corning Corp., 86 F.3d 482, 488 (6th Cir.1996), cert. denied, Official Comm. of Tort Claimants v. Dow Corning Corp., —— U.S. ——, 117 S.Ct. 718, 136 L.Ed.2d 636 (1997), and cert. denied, Breast Implant Tort Claimants v. Dow Corning Corp., — U.S. ——, 117 S.Ct. 718, 136 L.Ed.2d 636 (1997); accord Greater Detroit Resource Recovery Auth. v. United States EPA, 916 F.2d 317, 319 (6th Cir.1990). Furthermore, while factual findings must be accepted unless clearly erroneous, any application of legal principles to these subsidiary factual determinations will also be reviewed de novo. See Waxman v. Luna, 881 F.2d 237, 240 (6th Cir.1989); accord Alaska v. Babbitt, 75 F.3d 449, 451 (9th Cir.), cert. denied, —— U.S. ——, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996).

WMO claims that the district court does possess subject matter jurisdiction over the buildings relocation issue even as it may implicate post-settlement actions by the City, the equitable principle of estoppel, and WMO's inability to obtain approval for the relocation through a procedure provided for under the city zoning code. Both jurisdictional bases asserted by WMO hinge on the district court's continued jurisdiction over the terms and conditions of the Settlement Agreement and Consent Decree. Under either theory, we conclude that jurisdiction exists.

### A. Expressly Retained Subject Matter Jurisdiction

■ WMO first points out that, under the Consent Decree, the district court "retains jurisdiction over this cause for all purposes" and that either party may "move [the district court] for clarification of th[e] Decree and for supplemental or corrective relief in addition to and/or in lieu of any and all remedies provided for in the aforementioned Settlement Agreement." J.A. at 86–87 (Consent

---

**2.** See supra note 1 for background on these collateral issues.

Decree at 3–4). While this provision clearly provides the district court with continued ancillary jurisdiction over the terms and conditions of the Settlement Agreement and Consent Decree, *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381, 114 S.Ct. 1673, 1677, 128 L.Ed.2d 391 (1994), the real question before this court is whether a claim that estoppel has altered a party's obligations and duties under a consent decree should be considered an issue concerning *the terms and conditions of the Settlement Agreement and Consent Decree.*

■ WMO came before the district court in essence to assert the following: WMO believes constructing the buildings on the south side of the property will be in substantial compliance with PD–69 as incorporated into the Consent Decree (and the City at one point agreed with this); however, if the court does not agree, WMO believes *its obligations under the Consent Decree should be modified* in light of certain equitable considerations, and, quite frankly, *WMO believes it needs clarification of its obligations* given the City's recent denial under the zoning code of its request for the relocation. This was the basic crux of WMO's plea, and this falls squarely within the district court's explicitly retained jurisdiction under the Consent Decree. That WMO's claim invokes equitable principles does not change this observation. Equitable considerations are clearly factors a district court can address when they are related to a court's power and duty to modify, interpret, and oversee a consent decree. In fact, a closer look at WMO's second argument below reveals that equitable considerations are an inherent part of this power and duty. Confronted with a jurisdiction retention clause similar to the one at issue before this court, the Seventh Circuit rejected the argument that pursuant to a provision in the consent decree which required parties to execute any documents reasonably necessary to effectuate the purposes thereof, the reasonableness of the terms of such documents was a state law issue not within the court's jurisdiction. *See DiMucci v. DiMucci,* 91 F.3d 845, 847–48 (7th Cir.1996). The City's argument here that a district court may not consider whether the principle of estoppel has

made a requirement of a consent decree unenforceable must similarly be rejected.

Finally, the fact that WMO initially attempted to obtain approval for the relocation by relying on a procedure provided for in the city zoning code is irrelevant to the issue of jurisdiction since we are not requiring the district court to rule on the propriety of a zoning decision in a vacuum, but rather to determine a party's rights and obligations under a consent decree. There is no logical reason for the district court, in carrying out its duty of overseeing and enforcing the Consent Decree, to be prohibited completely from dealing with a city ordinance like § 150.289; as WMO has pointed out, the Consent Decree itself specifically refers to Dayton Zoning Code § 150.289 as a mechanism for modification of dimensions specified in PD–69. J.A. at 107 (Attach. A of Consent Decree at 3). Our decision that continuing ancillary jurisdiction exists does not, of course, suggest any particular resolution of the merits of the underlying arguments or issues.

**B. Inherent Subject Matter Jurisdiction**

■ WMO also claims that the district court has jurisdiction over the relevant dispute by virtue of the court's inherent jurisdiction over its judgments that have prospective effect. WMO is correct that a consent decree has "attributes of both a contract and of a judicial act" and is "essentially a settlement agreement subject to continued judicial policing." *Williams v. Vukovich,* 720 F.2d 909, 920 (6th Cir.1983); *accord Vanguards of Cleveland v. City of Cleveland,* 23 F.3d 1013, 1017 (6th Cir.1994). In fact, " '[o]nce approved, the prospective provisions of a consent decree operate as an injunction.' " *Vanguards,* 23 F.3d at 1018 (quoting *Williams,* 720 F.2d at 920); *see also Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981). This court has recognized that this injunctive quality requires courts to: "1) retain jurisdiction over the decree during the term of its existence; 2) protect the integrity of the decree with its contempt powers; and 3) modify the decree should 'changed circumstances' subvert its

intended purpose." *Williams,* 720 F.2d at 920 (citations omitted); *see also United States v. Swift & Co.,* 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932) ("If the reservation [of power to modify] had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need."). Courts, therefore, have a duty to enforce, interpret, modify,[3] and terminate their consent decrees as required by circumstance. This court has further found that

> [a]lthough interpretation of a consent decree is to follow the general rules prescribed in contract law, the courts, in effectuating the purposes or accomplishing the goals of a decree, are *not bound under all circumstances by the terms contained within the four corners of the parties' agreement.*

*Lorain NAACP v. Lorain Bd. of Educ.,* 979 F.2d 1141, 1148 (6th Cir.1992) (emphasis added), *cert. denied, Lorain Bd. of Educ. v. Ohio Dep't of Educ.,* 509 U.S. 905, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993). At the very least,

> even if the structure, language, and context of the decree d[o] not combine to render the district court's interpretation of the text permissible, the district court "has [the] inherent equitable power to modify a consent decree if satisfied that the decree 'has been turned through changing circumstances into an instrument of wrong.'"

**3.** It is interesting to note that the City itself characterized WMO's actions before the district court as a request for a modification of PD-69. J.A. at 323 (Tr. of District Ct. proceedings at 4).

**4.** Based on the above principles of inherent jurisdiction, Federal Rule of Civil Procedure 60(b)(5) specifically provides a mechanism for obtaining a modification of a consent decree when "it is no longer equitable that the judgment should have prospective application." Under Rule 60(b)(5), a modification may be granted "on motion and upon such terms as are just." The Supreme Court has stated that a significant change in factual conditions can be the basis for a court's granting of a modification under this rule. *See Agostini v. Felton,* ── U.S. ──, ──, 117 S.Ct. 1997, 2006, 138 L.Ed.2d 391 (1997) (quoting *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 384, 112 S.Ct. 748, 760, 116 L.Ed.2d 867 (1992)). In fact, the basis for a Rule 60(b) modification may be state law claims: mutual mis-

*United States v. Knote,* 29 F.3d 1297, 1302 (8th Cir.1994) (quoting *United States v. City of Fort Smith,* 760 F.2d 231, 233 (8th Cir. 1985) (quoting *Swift,* 286 U.S. at 114–15, 52 S.Ct. at 462–63 (1932))); *accord Lorain,* 979 F.2d at 1148.[4] Whether the situation presented here rises to the level where judicial modification is appropriate is a factual issue for the district court to decide in the first instance.

## III. CONCLUSION

Without reaching the merits of the underlying cause of action or giving any opinions as to whether WMO has presented new factual considerations or events which have rendered the strict enforcement of a consent decree so inequitable that a modification would be justified, this court concludes that the district court does possess the subject matter jurisdiction to address such an issue. Case law clearly suggests that a district court is not required to remain blind to all but the words contained in the four corners of a consent decree and that equitable considerations can properly be considered when they relate to the terms or conditions of a consent decree over which a district court has continuing jurisdiction.[5] The judgment of the district court is **REVERSED,** and this case is **REMANDED** for further proceedings consistent with this opinion.

NATHANIEL R. JONES, Circuit Judge, concurring.

take, fraud, misrepresentation, etc., and it is clear that equitable principles may be taken into account by a court in its exercise of discretion under this provision. *See* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2863 at 336 (2d ed.1995). In *United States v. City of Fort Smith,* the Eighth Circuit found that the district court should at the very least have held an evidentiary hearing to determine the validity of appellant's claim of mutual mistake, asserted under Rule 60(b), even though the *language* of the consent decree provided no basis for modification. *Id.* at 760 F.2d 231, 233 (8th Cir.1985).

**5.** In fact, "[r]elief from a judgment on the ground that it no longer is equitable should come from the court that gave the judgment." 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2863 at 350 (2d ed.1995).

I concur in the result reached by my colleague that a district court has subject matter jurisdiction to determine whether changed circumstances have altered the obligations of parties to a consent decree. I write separately to emphasize that this general statement of law does not grant courts and parties who have formerly agreed upon the terms of a consent decree, the ability to tamper with its express provisions absent clear proof of a significant change of factual circumstances that either: 1) "make compliance with the decree substantial more onerous," or 2) "when a decree proves to be unworkable because of unforseen obstacles," or 3) "when enforcement of the decree without modification would be detrimental to the public interest." *Vanguards of Cleveland v. City of Cleveland,* 23 F.3d 1013, 1013 (quoting *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 384–85, 112 S.Ct. 748, 760–61, 116 L.Ed.2d 867 (1992)). Modification of a consent decree is an extraordinary remedy that should not be undertaken lightly. *Brown v. Neeb,* 644 F.2d 551, 560 n.17 (6th Cir.1981) (citing *United States v. Work Wear,* 602 F.2d 110 (6th Cir.1979); *U.S. Steel Corp. v. Frat'l Ass'n of Steel Haulers,* 601 F.2d 1269, 1273–74 (3rd Cir.1979); *Mayberry v. Maroney,* 558 F.2d 1159, 1163 (3rd Cir. 1977)). While I do not disagree that "equitable" considerations may sometimes be a factor in that determination, the standard that must be met is clearly a high one. Thus, a decision to modify a consent decree requires a complete hearing and findings of fact which establish the necessity of the relief requested. *Vanguards,* 23 F.3d at 1017 (citation omitted).

Here, WMO did not seek a modification of the Consent Decree due to "changed circumstances" under Fed. R. Civ. Pro. 60 and did not allege any of the facts necessary to justify the granting of one.[1] WMO couched their request entirely in terms of the Ohio state law of equitable estoppel, seeking to bind the

City to a letter it had previously written.[2] If WMO had desired a modification of the Consent Decree, it should have asked for one in the court below, giving the district court an opportunity to consider the factors necessary in granting such a request. By attempting to bypass the rigorous standard applied when a party seeks to modify a consent decree and focusing entirely on the Ohio state law of equitable estoppel, WMO clouded the issue and caused the result reached in the court below. I agree, that the district court does have subject matter jurisdiction in this case, to decide the narrow issue of whether changed circumstances have altered WMO's obligation under the Consent Decree. I, however, emphasize that in order to justify a modification in this case, WMO must allege and prove much more than mere equitable estoppel under Ohio state law.

---

**1.** Indeed, WMO did not even invoke the modification provision of the PD–69 itself, which is incorporated into the Consent Decree and provides that amendments may be made by the City Plan Board.

**2.** Thus, WMO's request does not entail a clarification, interpretation or enforcement of the Con-

sent Decree because the court below already determined that WMO was bound by the terms of PD–69 (which specified the location of the buildings at issue), and that the denial of WMO's request for a change in the location of the buildings did not violate the Consent Decree.