**John D. RAIKOS, Plaintiff,**

v.

**BLOOMFIELD STATE BANK and Internal Revenue Service of the United States, Defendants.**

**No. IP 88–84–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Jan. 6, 1989.

Edward B. Hopper, II, Hopper & Cobb, Indianapolis, Ind., for plaintiff.

Edward W. Najam, Jr., Bloomington, Ind., for defendant, Bloomfield State Bank.

Peter Sklarew, Trial Atty., Tax Div. Dept. of Justice, Washington, D.C., Jeffrey L. Hunter, Asst. U.S. Atty., Office of the U.S. Atty., Indianapolis, Ind., for defendant I.R.S.

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

McKINNEY, District Judge.

This Right to Financial Privacy Action comes before the Court on the separate motions to dismiss filed by defendant Bloomfield State Bank and defendant Internal Revenue Service. The issues raised have been fully briefed and are ready for resolution. For two alternative and separate reasons, the Court hereby rules in favor of the defendants. First, the action was not timely filed and must be dismissed. Second, assuming arguendo that the action is not time-barred, the defendants are nonetheless entitled to summary judgment as a matter of law because the Right to Financial Privacy Act does not proscribe the conduct complained of in this case.[1]

### I. Statement of Facts

The plaintiff's complaint and an affidavit of the plaintiff dated February 1, 1985, reveal the following facts:

During the years 1978 through 1981, plaintiff John D. Raikos was a customer of Bloomfield State Bank, maintaining various accounts in that institution. Some time prior to September of 1981, the Internal Revenue Service began a routine audit of Mr. Raikos' financial status for the purpose of checking his tax liabilities. During the course of this audit, I.R.S. agent Charles Jordan visited the Bloomfield Bank seeking information concerning Raikos' financial dealings with the bank. In response to this informal request, the president of the bank, Mr. Jack Wikle, assembled and furnished various bank records to I.R.S. agent Jordan. This informal disclosure of the plaintiff's financial information occurred some time after September 1, 1981, but prior to October 6, 1981.

Thereafter Raikos received a copy of a formal summons executed by I.R.S. agent Jordan dated October 6, 1981. This summons directed the president of the Bloomfield Bank to appear before I.R.S. agent Jordan with all documents relating to the tax liability of Raikos. This summons, however, was issued after the documents in question were already turned over to the I.R.S.

1. Because of the Court's disposition of the case on these matters, it is unnecessary to address the service of process issues.

Subsequently, the I.R.S. instituted a lengthy investigation of Mr. Raikos' tax liabilities. Their examination led to an indictment in this Court, filed as cause number IP84–111–CR. During the defense of the criminal case, Raikos filed a sworn affidavit on February 1, 1985, in support of various motions to dismiss. One of the arguments raised in his defense was that the I.R.S. had allegedly violated the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–3422, by obtaining his bank records without notice to him.

In the 1985 affidavit, Raikos declared that he had learned certain information through discovery in the criminal action. In particular, Raikos had discovered that I.R.S. agent Jordan had visited Bloomfield Bank two times and talked to the bank president. During one of these meetings, Jordan "obtained the pertinent bank records from Bloomfield State Bank without any legal process, summons or subpoena...."

Finally, Raikos affirmed in his 1985 affidavit that he had talked with agent Jordan as early as 1981 about these matters. Specifically, Raikos stated the following in his affidavit:

> [D]uring October 1981 ... [agent Jordan] related to me over coffee that without my knowledge, on his own, had had been down in Greene County ... and he happened to pass by Bloomfield State Bank and went in to see and talk with Jack Wikle about my case. I was upset that he would do so without any legal process whatever and telephoned Mr. Stan Barkley to complain. Mr. Barkley then informed me that Revenue Agent Jordan had made two trips and had already obtained the records from [bank president] Jack M. Wikle....

*See* 1985 Raikos Affidavit, ¶¶ 20–22. The criminal prosecution proceeded and Raikos eventually pled guilty to a false filing charge.

On January 25, 1988, Raikos filed the present civil action against the I.R.S. and Bloomfield Bank, alleging that both defendants violated the Right to Financial Privacy Act by informally seeking and disclosing his financial records without proper notice to him. Raikos seeks a wide array of damages including compensatory damages of $2,000,000, punitive damages of $500,000, and costs and attorney's fees.

With this factual background at hand, the Court will first address the statute of limitations issue, and will then discuss whether the Financial Privacy Act applies to this type of informal disclosure of bank records to the I.R.S.

## II. *Plaintiff's Action is Time–Barred*

■ Relying on the 1985 affidavit submitted by Raikos in his defense of the criminal charges, defendants argue that this Court lacks subject matter jurisdiction because the plaintiff's action was not commenced within three years of discovery of the alleged violation of the Financial Privacy Act. For the reasons set forth below, the Court agrees and finds the cause untimely.

In 1978, Congress passed the Right to Financial Privacy Act, which is codified at 12 U.S.C. §§ 3401–3422. The Act prohibits financial institutions from disclosing customer information to most federal government authorities absent the consent of or formal notice to the customer. 12 U.S.C. §§ 3402, 3403. Certain exclusive remedies are created for improper disclosure of such records, including recovery of damages caused by violation of the Act, punitive damages, and attorney's fees. 12 U.S.C. § 3417. By allowing recovery from not only the disclosing financial institution but also from the government agency to whom disclosure is made, the Act operates as a limited waiver of sovereign immunity that otherwise prevents suit against the United States.

Actions to enforce any provision of the Act can only be brought in an appropriate United States district Court "within three years from the date on which the violation occurs or the date of discovery of such violation, whichever is later." 12 U.S.C. § 3416. Where, as here, Congress has specifically imposed conditions upon suit against the sovereign, such conditions must be scrupulously followed. *Coleman v. U.S. Bureau of Indian Affairs,* 715 F.2d

1156, 1161 (7th Cir.1983); *N.E.C. Corp. v. United States*, 806 F.2d 247, 249 (Fed.Cir. 1986). When a statute authorizes recovery from the sovereign and contains a limitations period, that limitations provision constitutes a condition on the waiver of sovereign immunity that must be met. *United States v. Mottaz*, 476 U.S. 834, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986).

Thus, the three year limitations period established by Congress in the Act goes to both the subject matter jurisdiction of this Court and the limited nature of the waiver of sovereign immunity provided by the Act. *Cf., Szyka v. U.S. Secretary of Defense*, 525 F.2d 62, 65 (5th Cir.1975). As such, the waiver of immunity must be strictly construed. *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986); *Lojuk v. Quandt*, 706 F.2d 1456 (7th Cir.1983).

Where the subject matter jurisdiction of the Court is challenged by the defendants, the plaintiff "has the burden of supporting the allegations of jurisdictional facts by competent proof." *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979); *Western Transportation Co. v. Couzens Warehouse & Distributors, Inc.*, 695 F.2d 1033, 1038 (7th Cir.1982); *Buxton v. Lovell*, 559 F.Supp. 979, 983 (S.D.Ind.1983). The plaintiff must support his jurisdictional allegations by a preponderance of the evidence in order to invoke the limited jurisdiction of this Court. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 184, 56 S.Ct. 780, 782–83, 80 L.Ed. 1135 (1936); *Haisten v. Grass Valley Medical Reimbursement Fund*, 784 F.2d 1392, 1396 (9th Cir.1986); *Terpstra v. Farmers and Merchants Bank*, 634 F.Supp. 47, 49 (N.D. Ind.1985).

In this case, then, plaintiff bears the burden of establishing that his civil action was filed within three years of discovery of the violations of the Act. In his complaint he claims that he did not discover the violation until February 4, 1985. If he could prove this, the present lawsuit filed on January 25, 1988, would be timely and jurisdiction would exist.

It is clear, however, that the impact of Raikos' 1985 affidavit cannot be avoided. In that sworn court document, Raikos affirmed under penalties of perjury that he first became aware of the informal disclosure of his bank records during discovery in the criminal action. As early as October of 1981, Raikos had spoken with I.R.S. agent Jordan and learned that Jordan "had already obtained the records" from the bank. Moreover, Raikos even raised the issue of the Financial Privacy Act during the defense of the criminal action.

Based on this evidence, the Court is compelled to find that Raikos discovered the violations upon which the present action is based some seven years ago. His own sworn affidavit proves that he had learned of the violations in late 1981. He simply cannot sustain his burden of proof on this jurisdictional issue by now renouncing the statements contained in the 1985 affidavit. His present assertion that he did not discover the violations until 1985 simply belies his prior affirmations. Accordingly, because the present action was not filed within three years of his discovery of the violations, this Court is powerless to entertain the suit.

### III. *Even if Jurisdiction Were Proper, The Act Does Not Proscribe Informal Disclosure to the I.R.S.*

■ Assuming arguendo that this Court did have subject matter jurisdiction over the action, the end result would be the same. For the reasons set forth below, summary judgment would have to be entered for the defendants under the undisputed material facts of this case.[2]

As noted previously, the gravamen of Raikos' complaint is that the I.R.S. informally sought and Bloomfield Bank informally disclosed his bank records without complying with the procedures of the Right to Financial Privacy Act. For instance, in paragraph fourteen of his complaint Raikos

**2.** The Court treats the parties' Rule 12(b)(6) motions to dismiss as Rule 56 motions for summary judgment because the 1985 affidavit of plaintiff Raikos has been submitted for consideration in addition to the plaintiff's complaint.

alleges that "Bloomfield State Bank, through Jack Wikle its President, assembled and furnished [Raikos' banking records] ... to the I.R.S. through [agent] Jordan who sought and obtained the same unlawfully...." This cause of action is thus wholly based on the failure of the I.R.S. to utilize summons and notice procedures to secure the records, which effectively deprived Raikos of any opportunity to quash the summons and prohibit the disclosure of his records.

The central question, then, is whether this type of informal disclosure of bank records to I.R.S. agents is proscribed by the Right to Financial Privacy Act. In order to resolve this issue, the language and history of the Act must first be analyzed.

The Act was passed by Congress in 1978 in direct response to the Supreme Court's decision in *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1975). In *Miller*, the Court determined that bank customers do not have a constitutionally protected privacy interest in their bank records. The Court reasoned that a customer lacks any legitimate expectation of privacy concerning the information kept in bank records, and noted that such records "have a high degree of usefulness in criminal, tax, and regulatory investigations and proceedings." *Miller*, 435 U.S. at 443, 96 S.Ct. at 1624 (citation omitted).

After *Miller*, Congress became concerned that federal government agencies would be unfettered in their access to an individual's banking records. In order to restrict the free flow of such information, Congress enacted the Financial Privacy Act and created specific procedures to be followed to obtain banking records.[3]

The Act restricts federal government access to financial records to five specific

means, including administrative summons, search warrants, and judicial subpoenas. 12 U.S.C. § 3402. Likewise, financial institutions are prohibited from disclosing such records to federal authorities except as provided in the Act. 12 U.S.C. § 3403. Disclosures made in violation of these specific formalities give rise to civil liability in the disclosing institution and the agency involved. 12 U.S.C. § 3417.

There are, however, a number of express exceptions to the Act, the most important of which is found in 12 U.S.C. § 3413(c). This section provides, "Nothing in this chapter prohibits the disclosure of financial records in accordance with procedures authorized by the Internal Revenue Code."

The precise and narrow question before the Court today, then, is one of statutory interpretation. Simply stated, the issue is whether the Internal Revenue Service's method of informally obtaining banking records is a "procedure[] authorized by the Internal Revenue Code." If such informal access is authorized by Title 26 of the United States Code, then the Right to Financial Privacy Act does not apply to the plaintiff's claim, thereby precluding any recovery from either defendant.[4]

This issue is one of first impression that has not been squarely addressed by any court. While a number of courts have appropriately followed the letter of the law to hold that the I.R.S. need not follow the Act in issuing its administrative summons,[5] no reported decision involves a case like this where the disclosure to the I.R.S. was voluntary and without formal process. However, the language of the statutes involved, the rules of statutory construction, the legislative history of the Act, and various secondary authorities all point to the conclusion that this informal disclosure to I.R.S.

**3.** See generally Kirschner, "The Right to Financial Privacy Act of 1978—The Congressional Response to United States v. Miller," 13 U.Mich.J.L. Ref. 10 (1979); Note, "The Right to Financial Privacy Act of 1978," 28 DePaul L.Rev. 1059 (1979).

**4.** It takes no great discussion to point out that if this type of procedure is allowed as to the I.R.S. agents seeking disclosure, then the disclosing

financial institution is also excepted from the Act.

**5.** See, e.g., United States v. MacKay, 608 F.2d 830 (10th Cir.1979); King v. United States, 684 F.Supp. 1038 (D.Neb.1987); McTaggart v. United States, 570 F.Supp. 547 (E.D.Mich.1983); United States v. Hill, 537 F.Supp. 677 (N.D.Tex.1982).

agents has not been proscribed by Congress.

A. *The language of the statutes:*

As noted, the Act exempts any procedure authorized by the Internal Revenue Code. Under Section 7602(a) of the Code, the I.R.S. is granted broad powers to ascertain the tax liability of any person. Specifically, the I.R.S. is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable ... or any person having possession, custody, or care of books ... relating to the business of the person liable for the tax ...; *and*

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

I.R.C. § 7602(a)(1)–(3) (emphasis added).

Defendants argue that the three methods enumerated are independent of one another, relying on the word "and" found after subdivision two. They assert that the informal procedures used in this case fall under the broad powers granted in subdivision one to "examine any books, papers or records ..." I.R.C. § 7602(a)(1). In response, plaintiff has failed to specifically address this issue, and the Court is persuaded that the type of informal activity complained of in this instance is in fact authorized by the Code.

If Congress had intended to make third-party summons the only available means of obtaining information from such institutions, it would have said so. The deliberate choice of the word "and" reveals that the procedures authorized in subdivision one of Section 7602(a) are exempted from the Financial Privacy Act to the same extent as third-party summons under I.R.C. § 7602(a)(2). Agent Jordan's informal examination of the plaintiff's banking records is thus authorized by Section 7602(a)(1).

This conclusion is reinforced by the rule of statutory construction that any statute purporting to waive the sovereign's immunity must be strictly construed. *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986); *Lojuk v. Quandt,* 706 F.2d 1456 (7th Cir.1983). If Congress truly intended to provide taxpayers with a recovery from the United States treasury for informal disclosure of customer banking records to I.R.S. agents, it would have made its desires known in the language of the Financial Privacy Act.

B. *Legislative history*

As noted previously, the Act was passed in order to provide bank customers with some statutory right of privacy in their banking records. However, Congress found it appropriate to exempt all disclosure procedures authorized under the Internal Revenue Code because of pre-existing statutory protections afforded the taxpayer. For instance, I.R.C. § 6103 directs that all taxpayer information collected by the I.R.S. shall be confidential. And, where formal summons are issued, the Code places similar restrictions on the I.R.S. as are found in the Financial Privacy Act. *See* I.R.C. §§ 7602–7609.[6]

As to the informal procedures used in this case, the legislative history indicates that the original version of the Act would have limited the I.R.S. exception to the formal summons procedures authorized by the Code. However, the language of the Act was changed and now specifically applies to *all* procedures authorized under the Code. A comparison of the two versions illustrates the point:

| Original Version | Enacted Version |
| --- | --- |
| (c) Nothing in this title prohibits the disclosure of financial records information in accordance with the procedures set out in section 1205 of the Tax Reform Act of 1976 [pertaining to third-party summons]. | (c) Nothing in this title prohibits the disclosure of financial records in accordance with the procedures authorized by the Internal Revenue Code. |

---

6. These summons procedures were specifically noted in the legislative history discussing the Internal Revenue Code exception found in 12 U.S.C. § 3413(c). *See* 1978 U.S.Code Cong. & Admin.News, 9273, 9356. The fact that only the summons procedures were mentioned (and not the informal procedures authorized by I.R.C.

§ 7602(1)), could give support to the argument that Congress did not mean to exempt informal disclosure to I.R.S. agents from the Act.

However, the Court finds that there is other more positive legislative history supporting such an exemption that overrides the mere silence contained in the House Report.

124 Cong.Rec. (1978) H11728, H11735 (daily ed., Oct. 5, 1978).

The reasons for expanding the exception to all procedures allowed by the Code were explained by Congressman LaFalce, who stated, "Mr. Chairman, this amendment is primarily corrective in nature. * * * [A]lso, it is necessary to exempt all procedures authorized carried out under the Internal Revenue Code which has its own privacy protections." *Id.*

Thus, the legislative history supports the conclusion that Congress did not create a civil remedy for informal disclosure of bank records to the I.R.S.

## C. *Secondary authorities*

In addition to the language and history of the Act, there are several secondary authorities that reinforce today's holding. First, an interpretive Treasury regulation concerning third-party summonses notes that there are other allowable informal means of examining third-party records. This regulation states, "Section 7609 does not restrict the authority under section 7602(a) (or under any other provision of law) to examine records and witnesses without serving a summons and without giving notice of an examination." 26 C.F.R. § 301.7609–1(a). Thus, the Treasury Department interprets I.R.C. § 7602(a) as allowing separate, independent procedures to examine bank records. While such an interpretive regulation is not binding on this Court, it does provide further support for the conclusion that the informal means of access used in this case is not proscribed by the Act.

Additionally, the Internal Revenue Manual sheds some light on this issue. For instance, the 1984 manual discussed the effect of the Financial Privacy Act on I.R.S. procedures. In addressing the effect of the Internal Revenue Code exception found at 12 U.S.C. § 3413(c), the manual noted:

> The effect of this exception is that the [Act] will not apply to requests for financial records by the Examination, Criminal Investigation, Collection, or Employee Plans and Exempt Organizations Divisions to the I.R.S. This exemption applies not only when the Service issues a summons pursuant to I.R.C. §§ 7602(a) and 7609, but also applies to the inspection of books and records pursuant to section 6933, and the examination of books and records and the taking of testimony without the issuance of a summons pursuant to section 7602(a).

Int.Rev.Man. § 34(12)(31) (1984).

Similarly, the 1988 manual notes the effect of the exception, and indicates that certain non-examination/non-collection activities that are not authorized by the Code remain subject to the Financial Privacy Act. These include federal tort claim investigations and investigations regarding practitioner misconduct, but not the broad informal procedures authorized by I.R.C. § 7602(a)(1). Int.Rev.Man. § 33(372) (1988).

Finally, several commentators have noted the availability of informal records gathering, both prior to and after the Act. For instance, a 1977 law review article discussing third-party summonses recognized that informal access to bank records was available prior to the Act:

> Section 7609 of ... [the] Code now requires that the customer be given notice of the service of the third-party summons and allows the customer to challenge the summons. These procedural protections, however, cannot provide complete protection against informal access. If an I.R.S. agent informally requests a customer's records and the bank cooperates, the customer whose records were examined would never learn of the acquisition unless he was subsequently prosecuted for some violation of the federal tax statutes.

Note, "Government Access to Bank Records in the Aftermath of *United States v. Miller* and the Tax Reform Act of 1976," 14 Hous.L.Rev. 636, 646 n. 77 (1977).

An article written after the Act directly addresses the narrow question presented in this case. The writer first recognized that "lacking in the Tax Code's provisions is a prohibition of informal access to third party records." Note, "The Right to Financial Privacy Act: New Protection for Financial

Records," 8 Ford.Urb.L.J. 617, 620 (1980). The author concluded that this availability of informal access presents a problem for the bank customer in light of the exception contained within 12 U.S.C. § 3413(c):

> Informal access to bank records seems to have been infrequent in the past because of the frequent and easy use of the pocket summons. However, informal access may now increase because the statute strictly regulates the issuance of third party summonses. In addition, a customer is unable to stay compliance should the financial institution accede to an informal request by the Service or if the Service fails to give the customer notice as required under section 7609. * * * *Thus, there exists a serious shortcoming in the Internal Revenue Code provisions, and, in turn, in the [Financial Privacy Act] because of the I.R.S. exemption it contains.*

*Id.* at 620 (emphasis added).

Thus, the language of both the Act and the Internal Revenue Code, the legislative history of the Act, and several secondary authorities all point to the conclusion that the Act does not proscribe informal access to bank records by I.R.S. agents. Whether this result is wise or logical is a matter of policy that only Congress can change. In its present form, the Right to Financial Privacy Act simply lacks any application to the instant case. This Court is without power to re-write the statute to provide a remedy where none exists.

Accordingly, because the Act is inapplicable to the plaintiff's claim, summary judgment would have to be entered for the defendants if this Court did have jurisdiction over the cause.

The Court holds in abeyance the Internal Revenue Service's motion for sanctions and will hold a hearing on the same at a date to be announced by the Court.

IT IS SO ORDERED.