# Internal Revenue Service Document Request to Department of Defense

The Defense Contract Audit Agency is not under a legal obligation, imposed by 26 U.S.C. § 7602(a), to comply with an Internal Revenue Service request for documents in its possession.

September 1, 1999

MEMORANDUM OPINION FOR THE ACTING GENERAL COUNSEL
DEPARTMENT OF THE TREASURY
AND
THE GENERAL COUNSEL
DEPARTMENT OF DEFENSE

This opinion resolves a dispute between the Department of the Treasury ("Treasury") and the Department of Defense ("DOD") concerning whether the Defense Contract Audit Agency ("DCAA") is under a legal obligation, imposed by 26 U.S.C. § 7602(a) (1994), to comply with an Internal Revenue Service ("IRS") request for documents in its possession.[1] We conclude that DCAA is not under such a legal obligation.

Section 7602(a) reads as follows:

> (a) **Authority to summon, etc.** — For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized —
>
> (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
>
> (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may

---

[1] Treasury first expressed its views on this dispute in its letter requesting our opinion *See* Letter for Dawn E. Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, from Edward S Knight, General Counsel, Department of the Treasury (May 19, 1997) DOD then provided us with its views, *see* Letter for Dawn E Johnsen from Judith A. Miller, General Counsel, Department of Defense (July 9, 1997), and in response to our request, Treasury submitted additional views, *see* Letter for Paul P. Colborn, Special Counsel, Office of Legal Counsel, from Edward S Knight (Aug 21, 1997) ("Treasury Reply") We subsequently received views from the Tax Division of the Department of Justice

deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

26 U.S.C. § 7602(a).

There is no question that a summons issued pursuant to the authority granted in § 7602(a)(2) imposes a legal obligation on the recipient.[2] Treasury does not rely on that second subsection of § 7602(a), however, *see* Treasury Reply at 2,[3] but instead relies on the first subsection, arguing that "section 7602(a)(1) gives the Secretary broad discretionary authority to examine any relevant documents — including all relevant documents in the possession of the Executive Branch. Implicit in that authority to examine is the correlative obligation on the part of Executive Branch agencies to comply." *Id.* Although the focus of Treasury's argument is that subsection (a)(1) imposes a legal obligation on federal agencies, the words of the provision are not susceptible to a reading that its scope is limited to federal agencies. Thus, this argument would suggest that § 7602(a)(1), standing alone, imposes a legal obligation on both federal agencies and any other person or entity in possession of records to provide the records to the IRS upon request.

We observe as a threshold matter that the materials Treasury has submitted to us indicate that, in practice, the IRS does not proceed as if subsection (a)(1) itself imposes a legal obligation on parties holding documents sought by the IRS. Thus, the IRS does not send entities possessing records a letter stating that they are under a legal obligation to produce the documents. To the contrary, the IRS requests the documents, and if it does not obtain voluntary compliance, it issues a summons. *See* Informal Brief for the Appellants at 10, *Peddie v. United States*, 131 F.3d 135 (4th Cir. 1997) (No. 97–1252) ("The IRS's procedures for obtaining . . . information call for the use of informal efforts at voluntary cooperation in the first instance. If such records are not obtained voluntarily, the Service may compel their production by issuing an administrative summons. *See* I.R.M. 4022.3(1)(a)(1987)."). That practice is reflected in the argument that the IRS made in *Neece v. IRS*, 922 F.2d 573, 574 (10th Cir. 1990), where it contended that § 7602(a)(1) "authorizes the IRS to review bank documents informally if the bank voluntarily agrees to cooperate with the IRS."

---

[2] The legal obligation imposed by the summons is judicially enforceable. *See* 26 U.S.C. § 7604 (1994); 26 U.S C A § 7609 (West 1989 & Supp 1999)

[3] We therefore do not consider in this opinion whether an IRS summons may be used to compel production of records from another federal agency, whether by issuance of a summons to the agency or to an individual serving as a custodian of records.

Moreover, even apart from this IRS practice, we do not find persuasive Treasury's argument that § 7602(a)(1) imposes a legal obligation. Both statutory text and case law establish that a legal obligation arises under § 7602(a) only when the IRS issues a summons. Under the plain meaning of § 7602(a), subsection (a)(2) — not subsection (a)(1) — must be understood as the subsection that addresses the legal obligation of persons and entities to provide records to the IRS: it is subsection (a)(2) that gives the power "[t]o summon." Indeed, Treasury's interpretation of subsection (a)(1) would render portions of subsection (a)(2) superfluous. A summons to produce "books, papers, records or other data" under the latter provision would add nothing as a legal matter if the former provision were understood to impose a legal obligation. It is also significant that Congress provided a comprehensive scheme for judicial enforcement of IRS summonses. *See* 26 U.S.C. § 7604 (procedures for judicial issuance of orders enforcing obedience to IRS summonses and punishing persons for default or disobedience with respect to such summonses); 26 U.S.C.A. § 7609 (special procedures for summonses issued to party other than the taxpayer). In contrast, neither § 7604 nor § 7609 — nor any other statutory provision — addresses judicial enforcement of § 7602(a)(1).

The Supreme Court has noted that the legal obligation under § 7602 derives from the IRS's issuance of a summons under subsection (a)(2):

> Through § 7602, Congress has imposed a duty on persons possessing information "relevant or material" to an investigation of federal tax liability to produce that information at the request of the Secretary or his delegate. That duty to provide relevant information expressly obligates *the person summoned* to produce documentary evidence and to "appear" and "give testimony." Imposition of such an evidentiary obligation is, of course, not a novel innovation attributable to § 7602. The common law has been the source of a comparable evidentiary obligation for centuries. In determining the scope of the obligation Congress intended to impose by use of this language, we have previously analogized, as an interpretive guide, to the common-law duties attaching to the issuance of a testimonial summons.

*United States v. Euge*, 444 U.S. 707, 712 (1980) (emphasis added).

The Supreme Court thus recognized in *Euge* that it is a summons that imposes a legal obligation on parties to provide documents or testimony. Subsection (a)(2) is the part of § 7602 that pertains to the summons authority. Subsection (a)(1) is separate, providing only that "the Secretary is authorized . . . [t]o examine any books, papers, records, or other data which may be relevant or material to such inquiry." By its terms, that subsection is not directed to persons or entities

possessing records and it does not address or affect the legal obligation of persons or entities to provide records to the IRS. It is directed only to the IRS, serving merely to make explicit what may well be implicit in more general authorization provisions of the Internal Revenue Code: that, in connection with its audit and related responsibilities, *see* 26 U.S.C. § 7601 (1994), the IRS is authorized to examine relevant records. *See Neece v. IRS*, 922 F.2d at 576 ("Literally, section 7602(a)(1) only authorizes the IRS to examine books and records. It gives no guidance concerning from whom the IRS can obtain these records and books or the 'procedures' which the IRS must follow in obtaining them.").

The courts have repeatedly characterized IRS efforts under subsection (a)(1) as informal requests seeking voluntary cooperation, which, of course, is inconsistent with an understanding that the holders of the information have a legal obligation to comply. For example, one court has explained that "[s]ection 7602 provides three separate means of [IRS] inquiry. *Section 7602(a)(1) provides for an informal, noncompulsory means of inquiry*. If an informal inquiry proves inadequate, Sections 7602(a)(2) and 7602(a)(3) provide mechanisms for the formal compulsion of the production of documents and testimony." *Speck v. United States*, 59 F.3d 106, 108 (9th Cir. 1995) (emphasis added) (rejecting argument that subsection (a)(2) describes the only way the IRS may obtain information and that subsection (a)(1) serves only to indicate IRS has authority to examine records after it obtains them pursuant to (a)(2)). *Accord United States v. McLaughlin*, 126 F.3d 130, 137 (3rd Cir. 1997) ("Section 7602(a) permits the government to conduct a formal investigation and issue summonses or to proceed informally. In this case, the government chose to proceed informally, and [the taxpayer's] former accountant cooperated with the investigation."), *cert. denied*, 524 U.S. 951 (1998); *Neece v. IRS*, 922 F.2d at 578 ("[T]he financial institution voluntarily [chose] to allow the IRS, pursuant to 26 U.S.C. § 7602(a)(1), to examine financial records pertaining to a taxpayer.").[4]

The critical distinction between the voluntariness of a response to a subsection (a)(1) request and the legal obligation underlying a response to a subsection (a)(2) summons is illustrated by the decision in *Johnson v. Treasury Dep't*, 917 F. Supp. 813 (N.D. Ga. 1995). In that case, a taxpayer sought injunctive relief to prevent the IRS from procuring certain information about the taxpayer's clients. The IRS had requested the information from the taxpayer, but the court had no information "indicat[ing] that the IRS ha[d] issued a summons to plaintiff." *Id.* at 819. The court dismissed the request for relief on ripeness grounds, stating that "[i]t is only when the IRS issues a summons and seeks to have a court enforce its terms,

---

[4] Courts have disagreed about whether the IRS can, pursuant to § 7602(a)(1), review customer records voluntarily produced by financial institutions, *compare Neece*, 922 F.2d at 577-78 (review unlawful) *with Raikos v. Bloomfield State Bank*, 703 F. Supp. 1365, 1370 (S.D. Ind 1989) (review lawful), but this difference reflects disagreement about whether the Right to Financial Privacy Act, 12 U.S.C.A. §§ 3401-22 (West 1989 & Supp. 1999), limits IRS access under § 7602(a)(1) It does not suggest disagreement about whether § 7602(a)(1) imposes a legal obligation to produce records.

that plaintiff may raise his objections. Thus, until a summons has been issued, the Court has no basis for entertaining plaintiff's objections to the IRS' request for information." *Id.* at 820. If the court had viewed subsection (a)(1) as imposing a legal obligation, a legal issue ripe for consideration would have been presented.

We emphasize that the only conclusion we reach in this opinion is that 26 U.S.C. § 7602(a)(1) does not impose on DCAA or other federal agencies (or any other person or entity) a legal obligation to provide the IRS with documents that it requests.[5] This does not mean, of course, that the IRS is precluded from requesting access to documents in the possession of federal agencies. The IRS unquestionably has such authority.[6] The nature and scope of its access, however, is a matter to be resolved within the executive branch. The significance of our opinion is that the executive branch deliberations concerning such access may not be premised on an understanding that federal agencies are under a legal obligation under § 7602(a)(1) to provide access.

Treasury has expressed its concern that the interpretation of § 7602(a)(1) that we adopt in this opinion "would allow the DCAA — and by extension all other government agencies — to block [Treasury's] statutory examination authority solely on policy objections." Treasury Reply at 4. Our opinion should not be read as giving any agency the unilateral authority to preclude the IRS from having access to records in its possession. It should be remembered that the President has the constitutional responsibility to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, and the subordinate executive branch officials who in the first instance are responsible for executing the various laws should work together cooperatively so as not to frustrate the President's ability to discharge his overarching supervisory responsibility. Whether the IRS will receive access in a particular situation is a matter to be resolved under applicable executive branch procedures.

RANDOLPH D. MOSS
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[5] As noted above, *supra* note 3, this opinion does not reach the question whether the IRS could obtain records from a federal agency through use of its summons authority.

[6] Of course, other federal law may circumscribe the circumstances in which a federal agency is authorized to share particular documents with the IRS. Any such limitations, however, are likely to turn on unique circumstances and thus are not addressed in this opinion