# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60145
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 21, 2014

Lyle W. Cayce
Clerk

FRANK B. MCCUNE, JR.,

Plaintiff–Appellant

v.

UNITED STATES DEPARTMENT OF JUSTICE; OFFICE OF UNITED
STATES ATTORNEY GENERAL, SOUTHERN DISTRICT OF
MISSISSIPPI,

Defendants–Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:11-CV-423

Before SMITH, PRADO, and OWEN, Circuit Judges.

PER CURIAM:*

Plaintiff–Appellant Frank McCune sued Defendants–Appellees the United States Department of Justice and the United States Attorney's Office for the Southern District of Mississippi (collectively "DOJ") for violations of the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. §§ 3401–3422, stemming

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60145

from the issuance of administrative subpoenas pursuant to a health-care-fraud investigation. The district court granted DOJ's motion for summary judgment on the ground that McCune's suit was barred by RFPA's three-year statute of limitations. We affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

McCune, a medical doctor, owned and operated several health-care businesses in Mississippi in the 1980s and 1990s.[1] Two of these businesses—Domicile, Inc. ("Domicile") and Serve-U Home Health Out-Patient and Rehabilitation Services, Inc. ("Serve-U Rehab")—were home-health agencies. Domicile and Serve-U Rehab each had a separate Medicare provider number under the name "Serve-U Home Health," and both companies were managed by Neo-Ventures Enterprises, Inc. ("Neo-Ventures"), another business owned by McCune. McCune's wife, Ellen McCune, worked with these businesses as well.

In 1997, the Department of Health and Human Services Office of the Inspector General ("HHS OIG") received a complaint alleging Medicare fraud by McCune and his companies. HHS OIG investigated the allegations in coordination with the local Medicare fiscal intermediary, Palmetto Government Benefits Administrators, and the U.S. Attorney's Office for the Southern District of Mississippi. In January and June 1999 and November 2001, the U.S. Attorney's Office issued seven administrative subpoenas pursuant to its authority under the Health Insurance Portability and Accountability Act ("HIPAA"), 18 U.S.C. § 3486, to investigate criminal health-care fraud.

The first three subpoenas, dated January 25, 1999, were directed to the custodians of records for financial institutions where the McCunes held accounts—Union Planters Bank, Industrial Employees Credit Union, and

---

[1] In its order granting summary judgment, the district court provided an exhaustive account of the facts underlying McCune's suit. We summarize only the facts relevant to this appeal.

2

No. 14-60145

Merchant and Farmers Bank. Notably, the fourth subpoena, issued the same day, was directed to the custodian of records for Neo-Ventures, one of McCune's companies, and was personally served on Ellen McCune. The fifth subpoena, dated June 23, 1999, was directed to Travel Service International, a travel agency used by the McCunes and their companies. The remaining two subpoenas, dated November 7, 2001, were directed to American Express Financial Services, another financial institution where the McCunes held accounts, and to Frank McCune in his capacity as custodian of records for Serve-U and Neo-Ventures. It is unclear whether either of the November subpoenas was delivered.

In 2002, the U.S. Attorney's Office convened a grand jury to consider charges against the McCunes. On August 12, 2002, the grand jury issued a subpoena to the custodian of records for Merchants and Farmers Bank, requesting documents relating to an account held by a company called Health Systems Designers, Inc. This was apparently the only grand jury subpoena in the case.

On November 20, 2002, the grand jury issued an indictment that charged the McCunes with conspiracy to commit health-care fraud, making false statements relating to health-care matters, and embezzlement, and authorized the Government to seek forfeiture of the proceeds of these crimes.

On December 13, 2002, the Government filed a motion for a post-indictment temporary restraining order and a bill of particulars specifying additional property subject to forfeiture. The McCunes were served with copies of both records, which listed the account numbers and exact balances of eleven accounts held by the McCunes at Merchant and Farmers Bank and Industrial Employees Credit Union—two of the financial institutions that had received DOJ's administrative subpoenas in January 1999.

No. 14-60145

On January 22, 2003, the grand jury issued a superseding indictment. The superseding indictment altered only the forfeiture count, which now listed one additional parcel of real property and the account information first published in the Government's TRO motion and bill of particulars.

On January 29, 2003, the *Jackson Clarion–Ledger*—the McCunes' local newspaper—published an article on the new indictment. The article, titled "New medical fraud indictment," reported that "[t]he new indictment s[ought] the forfeiture of funds in 12 bank accounts, totaling nearly $600,000." A jury acquitted the McCunes of all charges in May 2003.

Six years later, in May 2009, the McCunes received a letter from the Office of the U.S. Attorney for the Southern District of Mississippi. The letter stated the following:

> A review of our records records indicates that in January and June 1999 and in November 2011, this office issued administrative subpoenas to American Express Financial Service, Merchant & Farmers Bank, Industrial Employees Credit Union and Planters Bank, seeking to obtain certain financial records pertaining to you. Based on my review of the records in our possession, it appears that you were not provided notice of the issuance of these subpoenas as is required by Title 12, United States Code, Section 3405. In the event notice was provided to you, I ask that you kindly inform me of such as soon as possible. Otherwise, I encourage you to review the remedies available to you, which can be found at Title 12, United States Code, Section 3417.

On July 13, 2011, McCune filed suit in the United States District Court for the Southern District of Mississippi against DOJ, Merchant and Farmers Bank, Members Exchange Credit Union, Regions Financial Corporation, and Ameriprise Financial Services. He alleged that DOJ had served the 1999 and 2001 administrative subpoenas on financial institutions without the required certification and without prior or contemporaneous notice to him, in violation of 12 U.S.C. §§ 3403(b) and 3405. He further alleged that the named financial

4

No. 14-60145

institutions released his financial records in violation of RFPA and Mississippi law. McCune later agreed to dismiss each of the financial-institution defendants, and both McCune and DOJ filed cross-motions for summary judgment.

The district court granted DOJ's motion and denied McCune's motion. It concluded that McCune's suit was time-barred, reasoning that McCune had constructive notice of the facts giving rise to his suit by January 2003, and it correspondingly declined to reach DOJ's and McCune's other arguments. This appeal followed.

## II.   STANDARD OF REVIEW

The district court had original jurisdiction over McCune's RFPA claims under 28 U.S.C. § 1331, and had supplemental jurisdiction over McCune's state-law claims under 28 U.S.C. § 1367(a). This Court has jurisdiction under 28 U.S.C. § 1291.

We review a grant of summary judgment de novo, applying the same legal standards as the district court. *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 486 (5th Cir. 2004). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court considering summary judgment must construe all facts and evidence in the light most favorable to the non-movant, must draw all reasonable inferences in favor of the non-movant, and must refrain from making credibility determinations and weighing the evidence. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013). To defeat summary judgment, "the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

5

## III.  DISCUSSION

The principal issue on appeal is whether McCune's claims are time-barred. RFPA provides that "[a]n action to enforce any provision of this chapter may be brought in any appropriate United States district court without regard to the amount in controversy within three years from the date on which the violation occurs or the date of discovery of such violation, whichever is later." 12 U.S.C. § 3416. "Limitations periods in statutes waiving sovereign immunity are jurisdictional," *Ramming v. United States*, 281 F.3d 158, 165 (5th Cir. 2001) (per curiam), and we adhere to a "general policy" of narrowly construing such statutes against waiver of immunity, *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 191 (5th Cir. 2011) (per curiam). In addition, "the party claiming federal subject matter jurisdiction"—here, McCune— "bears the burden of proving it." *Epps v. Bexar-Medina-Atascosa Cntys. Water Improvement Dist. No. 1*, 665 F.2d 594, 595 (5th Cir. 1982).

Because, by either party's account, McCune discovered—or should have discovered—the violation after it was completed, the "date of discovery" is determinative of this appeal. As a general matter,[2] under the discovery rule "a limitations period begins to run when a claimant discovers the facts that give rise to a claim and not when a claimant discovers that those facts constitute a legal violation." *Mack v. Equable Ascent Fin., L.L.C.*, 748 F.3d 663, 665–66 (5th Cir. 2014) (per curiam). The facts relevant to this rule are (1) the existence of an injury and (2) the identity of the person who inflicted it. *Stewart v. Parish*

---

[2] This Court has not yet had occasion to construe RFPA's limitations provision. The district court relied heavily on two out-of-circuit district court cases that found RFPA claims time-barred on similar facts—*Giannone v. Bank of America, N.A.*, 812 F. Supp. 2d 216 (E.D.N.Y. 2011), and *Raikos v. Bloomfield State Bank*, 703 F. Supp. 1365 (S.D. Ind. 1989)— and the parties now dispute the relevance of these cases. We find it unnecessary to resolve this argument, as we are not bound by either case, and the undisputed facts before us support the conclusion that McCune had inquiry notice of the facts supporting his claim by May 2003 at the latest.

*of Jefferson*, 951 F.2d 681, 684 (5th Cir. 1992); *see also In re FEMA*, 646 F.3d at 190 ("Pursuant to [the discovery] rule, a claim accrues when a plaintiff knows both her injury and its cause."). A claimant need not have actual knowledge of these facts "if the circumstances would lead a reasonable person to investigate further." *Piotrowski v. City of Hous.*, 51 F.3d 512, 516 (5th Cir. 1995) (citing *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988) ("Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." (internal quotation marks omitted))). That is, a claimant may be charged with constructive notice of the relevant facts if, in the exercise of due diligence, he *should* have acquired actual knowledge of the latter. *See id.* at 516 n.12 (citing cases applying this "is or should be aware" standard to the calculation of limitations periods).

McCune asserts that he neither knew nor should have known of (1) his injury and (2) its cause until he received the letter from the U.S. Attorney's Office in May 2009. He rests this argument on the premise that his "injury" was "the statutory penalty of $100.00 per violation [of RFPA] or actual damages" and its "cause" was DOJ's violation of RFPA.

McCune misapprehends the nature of an "injury" for purposes of the discovery rule. As explained above, the limitations period commences when a claimant learns of the facts giving rise to a cause of action, not when a claimant learns that those facts present a violation of law. *Mack*, 748 F.3d at 665–66. McCune's "injury" was the release of his financial records without the required certification and notice, not the statutory damages prescribed for a RFPA violation or any actual damages McCune claims to have suffered as a result of the disclosure. The relevant inquiry is therefore when McCune was or, in due diligence, should have been aware that DOJ accessed his financial records without the necessary certification and notice.

7

The evidence in the record, even when viewed in the light most favorable to McCune, indicates that McCune had inquiry notice of this "injury" and its cause by May 2003 at the latest.

At the outset, one of DOJ's January 25, 1999 subpoenas was directed to the custodian of records for Neo-Ventures, one of McCune's companies, and was served on Ellen McCune. This subpoena sought payroll registers, American Express statements, gas-credit-card statements, accounts-payable records, vehicle logs, general ledgers, trial balances, and bank statements—records suggesting a government investigation into the company's finances.

Once the prosecution commenced in 2002, the evidence indicative of government intrusion became more stark. The Government's post-indictment TRO application and bill of particulars, both served on the McCunes' counsel on December 13, 2002, listed the account numbers and exact balances of eleven accounts held by the McCunes at two of the financial institutions that had received DOJ's January 25, 1999 subpoenas. The superseding indictment, issued January 22, 2003, reprinted the financial information that had first appeared a month before in the Government's post-indictment TRO application and bill of particulars. McCune acknowledged that only he and the financial institutions where he maintained his accounts possessed the information that appeared in these records, and he admitted that he was aware that the Government must have obtained this information from the financial institutions themselves. In fact, he now "admits he knew DOJ had access to his financial records when the superseding indictment [issued] but did not know how [the records] were obtained or the pertinent fact that they were obtained illegally."

Moreover, McCune conceded that "on or around January 23, 2003," he saw the *Jackson Clarion–Ledger* story reporting on the "funds in 12 bank accounts . . . totaling nearly $600,000" listed in the superseding indictment.

And as the trial approached in May 2003, McCune was given access to the Government's evidence, which included a summary of his bank account balances and several Merchant and Farmer's Bank statements, as well as the names of numerous employees of Merchant and Farmer's Bank who were expected to testify.[3] Nevertheless, neither McCune nor his counsel ever undertook any investigation to ascertain how DOJ obtained McCune's financial information.

McCune asserts that any such investigation would have been futile, as the RFPA violations were "concealed" by the grand jury proceedings. In effect, McCune argues that he is excused of his duty of diligence because he reasonably assumed that his financial records were released pursuant to a grand jury subpoena—a process that is exempt from RFPA, *see* 12 U.S.C. § 3413(i). As a reasonable litigant, the logic goes, McCune saw "nothing odd or ami[ss]" in the appearance of his financial information in the Government's records, so he neither knew nor should have known of the Government's failure to comply with RFPA.

McCune's argument fails for two reasons. First, the grand jury subpoenaed only a subset of the records at issue here. The grand jury issued just one subpoena in this case—to Merchant and Farmer's Bank—but the TRO motion, bill of particulars, superseding indictment, and trial exhibit list included references to accounts held at both Merchant and Farmer's Bank *and* Industrial Employees Credit Union. In addition, the grand jury subpoena sought records pertaining only to a company named Health Systems Designers, Inc., while the administrative subpoenas requested records relating to the McCunes

---

[3] Notably, two of the Government agents involved in the McCunes' prosecution—Assistant United States Attorney Robert Anderson and Special Agent Lynn Melear—indicated that they would have provided the bank records to the McCunes during discovery, and Anderson specifically testified that he maintained an open file policy "for all [of his] cases."

themselves as well as a number of entities they owned.[4] Correspondingly, if McCune had asked the Government how it had acquired his financial information, it would have been obligated to explain *both sets of accounts* and *all named entities*. Even if the Government intended to "conceal" its administrative subpoenas behind the grand jury subpoena, it could not have succeeded.

Second, and more fundamentally, McCune's position rests entirely on conjecture. McCune can only speculate as to how his counsel would have responded to a request to investigate the acquisition of his financial records, whether a "diligent inquiry" would have ceased upon learning of the subpoena, and whether the Government would have responded with a motion to dismiss based on the grand jury exception at § 3413(i), because none of this happened. We will not countenance McCune's failure to conduct even a minimal investigation by indulging his assumptions and engaging in speculation.

In sum, even accepting McCune's claim that he was not aware of the critical fact that DOJ had obtained his financial information *illegally*, a simple inquiry to the prosecution or a motion before the court would have revealed the source of the information. We agree with the district court that the circumstances present here "would [have led] a reasonable person to investigate further," *Piotrowski*, 51 F.3d at 516, and that McCune had "notice of facts which, in the exercise of due diligence, would have led to actual knowledge" of the RFPA violation, *Jensen*, 841 F.2d at 606 (internal quotation marks omitted). The Government's apparent use of a lawful means to discover *some* of the contested information does not relieve McCune of his obligation of diligent investigation as to the remainder. As a result, we find that the three-year limitations period commenced in May 2003, at the latest—nearly eight

---

[4] In light of these discrepancies, McCune misrepresents the record when he avers that "[i]t is without dispute that the financial information in the superseding indictment came from a grand jury subpoena."

No. 14-60145

years before McCune filed suit. In light of the jurisdictional nature of RFPA's limitations period, we agree with the district court that McCune has not discharged his burden to establish the timeliness of his suit and, in turn, the subject-matter jurisdiction of the federal courts. Because we affirm the district court's limitations ruling, we do not reach its denial of McCune's motion for partial summary judgment on the issue of RFPA liability.

## IV.   CONCLUSION

For the foregoing reasons, we AFFIRM the dismissal of McCune's suit.